HANSON BRIDGETT LLP
DIANE MARIE O'MALLEY, SBN 139166
domalley@hansonbridgett.com
WARREN HODGES, SBN 287162
whodges@hansonbridgett.com
MICHAEL E. TURNER, SBN 228747
mturner@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:     (415) 777-3200
Facsimile:     (415) 541-9366

Jonathan Van Ee, SBN 214129
jonathan@probusinessattorneys.com
THE LAW OFFICES OF JONATHAN VAN EE
7172 Regional Street No. 342
Dublin, California 94568
Telephone:     (415) 938-7694

Attorneys for Defendant
SAN FRANCISCO HEALTH CARE
AND REHAB INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE JOHNSON, individually, on a representative basis, and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>SAN FRANCISCO HEALTH CARE AND REHAB INC, a California Corporation; and DOES 1 through 20, inclusive;<br><br>Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**DECLARATION OF MICHAEL E. TURNER IN SUPPORT OF DEFENDANT SAN FRANCISCO HEALTH CARE AND REHAB INC.'S NOTICE OF REMOVAL PURSUANT TO PREEMPTION 28 U.S.C. §§ 1331 AND 1441(a) (FEDERAL QUESTION) UN DER (LABOR MANAGEMENT RELATIONS ACT, 1947 § 301, 29 U.S.C.A. § 185)**<br><br>**(San Francisco County Superior Court Case No. CGC 22-597785)**<br><br>Complaint Filed:     January 24, 2022<br>Trial Date:             Not Set |

I, Michael E. Turner, declare as follows:

1.      I am an attorney at the law firm Hanson Bridgett LLP, counsel of record for the

Defendant San Francisco Health Care and Rehab Inc. in the above-captioned matter. I have personal

-1-

1  knowledge of the facts set forth herein or know of them from public filings, and, if called as a

2  witness, could and would competently testify thereto. I submit this declaration in support of

3  Defendant's Notice of Removal of Action.

4        2. On January 24, 2022, an action was commenced in the Superior Court of the State of

5  California, in and for the County of San Francisco, entitled *Jamie Johnson, individually, on a*

6  *representative basis, and on behalf of all others similarly situated; v. San Francisco Health Care*

7  *and Rehab Inc, a California Corporation; and DOES 1 through 20, inclusive*, designated as Case

8  No. CGC-22-597785.

9      The complaint alleges seven causes of action, alleging California Labor Code claims that

10  also fall within the provisions of a collective bargaining agreement that covers some, but not all of

11  the putative class member/employees.

12      The seven causes of actions are:  (1) failure to pay minimum wage; (2) failure to pay

13  overtime wages; (3) failure to provide meal periods; (4) failure to provide rest breaks; (5) failure to

14  timely pay final wages; (6) failure to provide accurate itemized wage statements; (7) unfair and

15  unlawful competition.

16      3. On or about February 14, 2022, the Summons and Complaint was served by

17  substitution on Defendant San Francisco Health Care and Rehab Inc, a California Corporation.

18  (**Exhibits B, C, and F**.)

19      4. Pursuant to California Code of Civil Procedure section 415.20, on or about February

20  16, 2022, the Summons and Complaint was mailed to Defendant San Francisco Health Care and

21  Rehab Inc, a California Corporation.  (**Exhibits B, C, and F**.)

22      5. Pursuant to California Code of Civil Procedure section 415.20, a summons and

23  complaint is deemed served ten (10) days after mailing.

24      6. On February 26, 2022, the Summons and Complaint were deemed to have been

25  served on Defendant San Francisco Health Care and Rehab Inc, a California Corporation.

26      7. 28 U.S.C. § 1446, subd. (b)(1) requires a removal to be filed within thirty days of

27  completed service of the summons.

28  / / /

-2-

DECLARATION OF MICHAEL E. TURNER IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

8. Defendant San Francisco Health Care and Rehab Inc, a California Corporation is removing the action on March 28, 2022 or thirty (30) days after the service of the Summons and Complaint.

9. Plaintiff, and some of the putative class member/employees' employment, is governed by the Collective Bargaining Agreement  (CBA) between SEIU, Local 215 and San Francisco Health Care and Rehabilitation, Inc., attached herein as <u>Exhibit A</u> to the Request for Judicial Notice.

10. A true and correct copy of the initial state court pleadings and other documents in this actions are attached as follows:

    1. Request for Judicial Notice (with CBA) – **Exhibit A**;

    2. Summons – **Exhibit B**;

    3. Complaint – **Exhibit C**;

    4. Civil Case Cover Sheet – **Exhibit D**;

    5. Alternative Dispute Resolution Program Information Package – **Exhibit E**;

    6. Proof of Service – **Exhibit F**; and

    7. Notice of Case Management Conference – **Exhibit G**.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.  Executed this 28th day of March, 2022 at San Francisco, California.

_____

MICHAEL E. TURNER

DECLARATION OF MICHAEL E. TURNER IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

18399548.4

# EXHIBIT A

1   HANSON BRIDGETT LLP
    DIANE MARIE O'MALLEY, SBN 139166
2   domalley@hansonbridgett.com
    WARREN HODGES, SBN 287162
3   whodges@hansonbridgett.com
    MICHAEL E. TURNER, SBN 228747
4   mturner@hansonbridgett.com
    425 Market Street, 26th Floor
5   San Francisco, California 94105
    Telephone:      (415) 777-3200
6   Facsimile:      (415) 541-9366

7   Jonathan Van Ee, SBN 214129
    jonathan@probusinessattorneys.com
8   THE LAW OFFICES OF JONATHAN VAN EE
    7172 Regional Street No. 342
9   Dublin, California 94568
    Telephone:      (415) 938-7694
10
    Attorneys for Defendant
11  SAN FRANCISCO HEALTH CARE
    AND REHAB INC.
12

13              **UNITED STATES DISTRICT COURT**

14             **NORTHERN DISTRICT OF CALIFORNIA**

15

16  JAMIE JOHNSON, individually, on a          Case No.
    representative basis, and on behalf of all others
17  similarly situated;                        **CLASS ACTION**

18              Plaintiff,                      **DEFENDANT SAN FRANCISCO
                                                HEALTH CARE AND REHAB INC.'S
19          v.                                  REQUEST FOR JUDICIAL NOTICE IN
                                                SUPPORT OF NOTICE OF REMOVAL**
20  SAN FRANCISCO HEALTH CARE AND
    REHAB INC, a California Corporation; and    **(San Francisco County Superior Court Case
21  DOES 1 through 20, inclusive;              No. CGC 22-597785)**

22              Defendants.                     Complaint Filed:   January 24, 2022
                                                Trial Date:        Not Set
23

24          Pursuant to Rule 201 of the Federal Rules of Evidence, Defendant SAN FRANCISCO

25  HEALTH CARE AND REHAB, INC. ("Defendant") requests that this Court take judicial notice of

26  the following document:

27  ///

28  ///

-1-

DEFENDANT SAN FRANCISCO HEALTH CARE AND REHAB INC.'S  REQUEST FOR
JUDICIAL NOTICE IN SUPPORT OF NOTICE OF REMOVAL

1.       Collective Bargaining Agreement between SEIU, Local 215 and San Francisco Health Care and Rehabilitation, Inc., effective October 1, 2018 through September 30, 2021 (**Exhibit A**).

Defendant requests the Court take judicial notice of **Exhibit A** attached hereto.  A court "may take judicial notice of a CBA [and documents filed in state court] in evaluating a motion to dismiss … [as] such documents are properly are considered material… 'not subject to reasonable dispute' because they are 'capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned.'"  *Jones v. AT & T*, No. C 07-3888 JF, 2008 WL 902292, *2 (N.D. Cal. Mar. 31, 2008).  *See also Densmore v. Mission Linen Supply*, 2016 WL 696503, at *4 (E.D. Cal. Feb. 22, 2016) (taking judicial notice of CBAs where necessary to resolve issues of preemption). Therefore, the Court here should take judicial notice of the CBA (Exhibit A) filed in state court. *See Williams v. Winco Holdings, Inc*.  (Case No. 1:16-cv-00508-DAD-SAB Document 19, filed 0707/16 ED Ca., op at p. 2.

Based on the foregoing authority, Defendant respectfully requests that this Court take judicial notice of the materials appended hereto as **Exhibit A**.

DATED:  March 28, 2022                          Respectfully submitted,

HANSON BRIDGETT LLP


By:      */s/ Michael E. Turner*
             DIANE MARIE O'MALLEY
             WARREN HODGES
             MICHAEL E. TURNER
             Attorneys for Defendant SAN FRANCISCO
             HEALTH CARE AND REHAB INC.

# EXHIBIT A



# SEIU
# Local 2015

**2910 Beverly Boulevard**
**Los Angeles, CA  90057**
**1-855-810-2015**
**www.seiu2015.org**

**333 Hegenberger Road**
**Suite 400**
**Oakland, CA 94621**

## Collective Bargaining Agreement with

# SAN FRANCISCO HEALTH CARE AND REHABILITATION, INC.
## 1477 Grove Street, San Francisco, CA 94117

**Effective October 1, 2018 through September 30, 2021**

# TABLE OF CONTENTS

AGREEMENT ................................................................................................................ 1

INTRODUCTION ......................................................................................................... 1

ARTICLE 1.        RECOGNITION .......................................................................... 1

ARTICLE 2.        UNION SECURITY ..................................................................... 2

ARTICLE 3.        MANAGEMENT RIGHTS ......................................................... 4

ARTICLE 4.        UNION VISITATION .................................................................. 4

ARTICLE 5.        PROBATIONARY PERIOD ........................................................ 4

ARTICLE 6.        SHOP STEWARDS ...................................................................... 4

ARTICLE 7.        CATEGORY OF EMPLOYEES ................................................. 5

ARTICLE 8.        BULLETIN BOARDS .................................................................. 6

ARTICLE 9.        ORIENTATION OF EMPLOYEES ............................................ 6

ARTICLE 10.       NON-DISCRIMINATION ........................................................... 7

ARTICLE 11.       SENIORITY ................................................................................. 7

ARTICLE 12.       VACANCIES ................................................................................ 9

ARTICLE 13.       HOURS OF WORK ...................................................................... 9

ARTICLE 14.       SAFETY AND HEALTH ........................................................... 11

ARTICLE 15.       WORKLOAD DISTRIBUTION ................................................ 11

ARTICLE 16.       JOB DESCRIPTIONS ................................................................ 12

ARTICLE 17.       WAGES ...................................................................................... 12

ARTICLE 18.       MISCELLANEOUS PROVISIONS .......................................... 13

ARTICLE 19.       VACATION ................................................................................ 13

ARTICLE 20.       HOLIDAYS ................................................................................ 15

ARTICLE 21.       SICK LEAVE ............................................................................. 15

ARTICLE 22.       HEALTH PLAN ......................................................................... 16

ARTICLE 23.       BEREAVEMENT LEAVE ........................................................ 17

ARTICLE 24.       JURY DUTY ............................................................................... 18

ARTICLE 25.       REST PERIODS AND LUNCH PERIODS ............................... 18

ARTICLE 26.       LEAVE OF ABSENCE WITHOUT PAY .................................. 18

ARTICLE 27.       DISCIPLINE AND DISCHARGE ............................................ 20

ARTICLE 28.       GRIEVANCE AND ARBITRATION ........................................ 20

**ARTICLE 29.**     **NO STRIKE OR LOCKOUT** ........................................................................ **22**

**ARTICLE 30.**     **SUCCESSORSHIP** ................................................................................................. **22**

**ARTICLE 31.**     **SAVINGS CLAUSE** ............................................................................................. **22**

**ARTICLE 32.**     **SCOPE OF BARGAINING** ................................................................................. **22**

**ARTICLE 33.**     **EMPLOYMENT SECURITY** ............................................................................ **23**

**ARTICLE 34.**     **NEUTRALITY AGREEMENT** .......................................................................... **23**

**ARTICLE 35.**     **SOLE AGREEMENT AND WAIVER** ............................................................. **24**

**ARTICLE 36.**     **EDUCATIONAL PROGRAM** .......................................................................... **25**

**ARTICLE 37.**     **SOLE AGREEMENT AND WAIVER** ............................................................. **25**

**ARTICLE 38.**     **TERM OF AGREEMENT** ................................................................................. **26**

**APPENDIX A**    **WAGES** ................................................................................................................. **28**

**APPENDIX B**    **UNION DOCUMENTS** ....................................................................................... **32**

# SAN FRANCISCO HEALTH CARE AND REHABILITATION, INC. COLLECTIVE BARGAINING AGREEMENT

## AGREEMENT

THIS AGREEMENT is made and entered into by and between **SAN FRANCISCO HEALTH CARE AND REHAB. INC.**, California Corporation with primary place of business located at 1477 Grove Street, San Francisco, CA 94117 (hereinafter referred to as the "Employer" or "Company" or "SFHCR") and **SEIU LOCAL 2015** (hereinafter referred to as the "Union"). The terms of this Memorandum of Agreement (or "Agreement") apply to employees who passed the ninety (90) scheduled workdays Probationary Period and were continuously employed for a period of no less than sixty (60) scheduled workdays in part-time or full-time capacity (the "Regular employees"). Part-time employees shall receive fifty percent (50%) of the benefits mentioned in this Agreement, unless otherwise specified.

## INTRODUCTION

The parties to this Agreement declare and establish these terms and conditions of employment set forth herein to be mutual expressions of understanding bearing the good faith intentions of each and jointly acknowledge their commitment to harmonious relations thereto, bearing in mind that the interests of quality care for facility residents is promoted through the assurance of dignity and respect to employees. To this end, the Employer, the facility manager, employees and residents alike will be treated with patience, kindness and respect. Further, this Agreement, as expressed below, is intended to be an historic attempt by the Union and the Employer in the San Francisco region to enter into a working relationship and partnership between labor and management with the intention of establishing a working environment and atmosphere where labor and management can and will work together to assure the highest possible level of care to the residents of the facility, as allowed and as a result of the confines and budgetary restraints placed upon the long-term care industry in California by both the United States and California State government.

## ARTICLE 1.　　　　　RECOGNITION

The Employer recognizes the Union as the exclusive bargaining representative for the purpose of collective bargaining with respect to wages, hours and other conditions of employment for all employees in the bargaining unit; said bargaining unit including non-supervisory licensed vocational nurses, certified nurses' aides, activity aides, restorative aides, housekeepers, laundry aides, kitchen aides, central supply aides, maintenance workers, and cooks said unit excluding Administrator, Department Heads, Chief and

Shift supervisors, center supply manager, and maintenance managers, registered nurses, supervisory licensed vocational nurses, office clerical employees, and guards, managers, and supervisors as defined in the National Labor Relations Act.

# ARTICLE 2.    UNION SECURITY

## Section 2.1 – Union Membership Requirement

The Employer will allow Union Representative to present each employee, at the time of hire or at the new employee orientation, with a Union Membership Card, Authorization Card, and Union Security Notice, attached hereto as Appendix B (the "Union Documents"). The Employer will provide the Union Representative with a schedule of orientations; or, if not practical, will cooperate with the Union Representative to schedule a monthly meeting with the full-time and part-time unit employees who passed their probation period by the end of the previous calendar month. The Union may also leave the Union Documents and instructions for submitting these documents to the Union in the employee breakroom.

Not later than the thirty-first (31st) workday following the beginning of employment, or the effective date of this Agreement, or the execution date of this Agreement, whichever is later, every employee subject to the terms of this Agreement shall, as a condition of employment: (1) become and remain a member of the Union, paying the periodic dues and initiation fees uniformly required; or (2) pay a fee in the amount equal to the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership; or (3) if the employee objects to payment of the full membership dues, consistent with the instructions for objection provided in the Union Security Notice, such employee shall pay that portion of the agency fee that is related to the Union's representation costs. It is the Union's responsibility to notify the employee in advance and in writing, with a copy to the Employer of the employee's obligations under this Article and of the Union's intent to enforce the requirement.

The Union may request that the Employer terminate employees that fail to comply with the requirements of this Article and Employer shall, within thirty (30) workdays, comply with such request. The Company shall not be required to terminate an employee with verifiable special skills, utilized by the Company, and if such termination reduces quality of care or makes Company non-compliant with any applicable Federal or State laws or regulations. The Union agrees to defend, indemnify and hold harmless the Employer with respect to any asserted claim, obligation or cost of defending against any such claim or obligation of any person arising out of the Employer's compliance with the terms of this Article. The Union agrees to reimburse Employer for fees and expenses incurred by the Employer in defending the Employer against claims or legal actions resulted from the Employer complying with the provisions of this Article.

**Section 2.2 – Voluntary Written Assignment of Wages**

During the term of the Agreement, the Employer will honor written assignment of wages to the Union for payment of Union membership fees, provided such assignments are voluntary entered into by Union members. Upon voluntary signed authorization by an employee, the Employer agrees to deduct the monthly Union dues and initiation fees, and remit same to the Union not later than the thirtieth (30th) day of the month following the month in which the dues were deducted.

**Section 2.3 – Initiation Fees**

The Union reserves the right to begin charging initiation fees if duly voted upon by the membership.

**Section 2.4 – COPE**

Upon voluntary signed authorization by an employee, and a statement from the Union of the dollar amounts due for each employee, the Employer agrees to take out COPE deductions for the Union (Voluntary contributions to the Union's Committee on Political Education (COPE) fund) as long as it is contained in the overall amount deducted from the employee's paycheck. The Employer will remit such contributions to the Union in accordance with the procedure set forth in this Article.

**Section 2.5 – Check-Off**

Per Union request, the Employer shall provide the Union with the following information about the unit members:

> List of employees who are Union members;

> Last known home address;

> Primary phone number if provided by the employee. If not, last known home phone number, if any is available;

> Job classification, department;

> Category (Full-time, Part-time);

> Hire date;

> Rate of pay.

**Section 2.6 – Hold Harmless**

The Union will indemnify and hold harmless the Employer with respect to any asserted claim or obligation or cost of defending against any such claim or obligation of any person arising out of the Employer's compliance with the provisions of this Article.

## ARTICLE 3.                    MANAGEMENT RIGHTS

The Employer retains the exclusive right to manage the facility; to direct, control, and schedule its operations and workforce and to make any and all decisions affecting the business, whether or not specifically mentioned herein.

## ARTICLE 4.                    UNION VISITATION

Official representatives of the Union will be permitted to visit the Nursing Home to ascertain that the provisions of this Agreement are being observed and to confer with employees covered by this Agreement during their non-work time and in a non-work area. Such visits shall not interfere with the operation of the Nursing Home or the performance of employee's duties, and the Union Representatives shall inform the Administrator, Director of Nursing Service or House Supervisor of his/her visit either prior to or upon entering the Nursing Home's premises. The Union will furnish the names of no more than three (3) authorized representatives and the Employer is obligated only for admission of such authorized representatives. Access to the Nursing Home during normal business hours for the above-stated reasons shall not be unreasonably denied.

The foregoing visitation privilege does not include or allow the holding of Union meetings on the Nursing Home premises, without regard to whether Union Representatives do or do not attend.

## ARTICLE 5.                    PROBATIONARY PERIOD

Employees shall be on probationary status for ninety (90) calendar days. The probationary period does not begin until an employee is classified or hired as a regular full-time, regular part-time employee. Temporary and probationary employees may be disciplined or terminated by the Employer without recourse to the Grievance Procedure as set forth in Article 28 (Grievance and Arbitration) of this Agreement. An employee shall be considered a probationary employee until he or she has actually worked sixty-three (63) days.

## ARTICLE 6.                    SHOP STEWARDS

### Section 6.1 – Notice of Stewards

The Union membership at the San Francisco Healthcare and Rehabilitation, Inc., may elect three (3) Stewards, but no more than two (2) on a single shift and three (3) alternative Stewards for the purpose of receiving and investigating grievances. The Union agrees to furnish the Employer with a written list of the Stewards and alternates so designated and with any change in the list which may be made from time to time, providing that the total

number of representatives that Employer shall be obligated to deal with not to exceed three (3) people in total. The Employer will have no obligation to deal with representatives of the Union who are not on said list. Alternates shall represent the Union in the absence of the regular Stewards.

## Section 6.2 – Steward's Rights

The Union shall be allowed Stewards and alternates for the following purposes:

1. To present or discuss with the Employer or its designated representative(s) any employee grievances or complaints, providing that employee is present during the discussion or authorizes Employer to discuss the matter with the Steward.

2. To an investigation with respect to any such grievance or complaint.

3. A Union Steward or alternate adequate time to investigate and seek resolution of grievances provided however, that such performance shall not be done during Steward hours paid for by Employer and shall not unduly interfere with his/her work.

4. The Union Steward or alternate shall be permitted, and/or the Field Representative shall be allotted fifteen (15) minutes of time to address bargaining unit employees at orientation. The Employer shall not be required to delay or reschedule the orientations if the Steward is not available.

No Steward shall leave his/her job while his/her presence is necessary for the safe and efficient operation of the facility. The Steward shall conduct his/her activities within a reasonable amount of time.

Union Stewards may be granted up to two (2) workdays off without pay each year for the purpose of attending Union educational programs if said time is requested ten (10) days in advance, provided that such time off does not require the use of registry, overtime, or otherwise interfere with the safe and efficient operation of the facility. Approval of requested Union educational leave shall not be unreasonably withheld or denied.

## Section 6.3 – Non-Discrimination

The Employer agrees that Stewards shall not be hindered, coerced, restrained or interfered with in the performance of their duties of investigating and presenting adjustment or disputes as provided in this Article.

## ARTICLE 7.                    CATEGORY OF EMPLOYEES

There shall be four (4) employee categories: Regular Full-Time, Regular Part-Time, Casual, and Temporary.

### Section 7.1 – Full-Time Employee
A Regular Full-Time employee is one who is regularly scheduled to work thirty-two (32) or more hours per week.

### Section 7.2 – Part-Time Employee
A Regular Part-Time employee is one who is regularly scheduled to work less than thirty-two (32) hours, but at least twenty (20) hours per week.

### Section 7.3 – Relief/As Needed Employee
A Relief/As Needed employee is one who is employed intermittently as required. A Relief/As Needed employee who is regularly assigned a pre-determined work schedule of twenty (20) hours a week or more for a period in excess of two (2) consecutive months shall be reclassified as a Regular Full-Time or Regular Part-Time employee, whichever is applicable. Employees shall have the right to request a change in their classification. The Employer shall have the right to refuse a change in classification and terminate employees if the employee is not willing to continue working in the current job.

### Section 7.4 – Temporary Employee
A Temporary employee is one who is hired either part-time or full-time on a pre-determined work schedule to work for a limited period, which shall not extend beyond ninety (90) days.

## ARTICLE 8.              BULLETIN BOARDS

The Employer agrees to allow the posting of Union material on a designated Union bulletin board. Such Union material shall be limited to official Union notices, such as notices of meetings, picnics, dues increases, negotiations, etc. The Union agrees not to post materials to the Union bulletin board, which is controversial, derogatory, or editorial in nature.

## ARTICLE 9.              ORIENTATION OF EMPLOYEES

The Employer shall provide new hires with an orientation to the facility, its procedures, and methods of maintaining quality care for its residents sufficient to enable employees to perform their duties.

The Union recognizes that the scope of orientation will vary with the skill level and experience of the individual employee. The goal of orientation shall be proficiency in the care of residents, the proper function of the facility and cooperative efforts with fellow employees.

In addition, the Employer will provide fifteen (15) minutes during said orientation to allow a Shop Steward, if available, to orient employees to the collective bargaining agreement, Union information packet, dues deduction authorization forms, member's

rights, identification and role of the Shop Stewards. A representative of the Employer and the Union Field Representative may attend as observers, but not as active participants.

# ARTICLE 10.          NON-DISCRIMINATION

No employee covered by this Agreement shall be discriminated against because of membership in the Union or activities on behalf of the Union.

Neither the Employer nor the Union shall discriminate against any employee covered by this Agreement on account of race, color, religious creed, national origin, age, sex, sexual orientation or disability.

# ARTICLE 11.          SENIORITY

### Section 11.1 – Seniority and Layoff Definition

Seniority shall commence on the original date of hire as a regular full-time or regular part-time employee, provided the seniority shall have no application during the probation period as defined in Article 5 (Probationary Period), seniority will revert to the employee's most recent start date of continuous employment as regular full-time or regular part-time employee.

Job Classification Seniority shall commence on the most recent date of employee starting to perform work as regular full-time or regular part-time employee within such job Classification.

Seniority and Job Classification Seniority shall not accrue during employee leave of absence and may be interrupted as further defined by this Agreement.

Regardless of the fact that the Employer commenced acquisition of certain assets of the Skilled Nursing Facility located at 1477 Grove Street, San Francisco, CA 94117 (the "Facility") on February 11, 2011, all employees at the Facility shall retain seniority starting from the first (1st) day of continuous employment as regular full-time or regular part-time employee at the Facility regardless of Facility ownership on that date.

Layoff is defined as involuntary loss of position by employee due to the permanent reduction in the number of regular positions within a classification, or permanent reduction of hours that would result in a change in category.

### Section 11.2 – Layoff and Recall

For purposes of layoff and recall, the principle of job classification seniority within the shift shall govern provided the senior employee is qualified to perform the available work at the level then performed at the company and unless to be laid-off employee possess job-required skills not available otherwise at the sufficient level among the remaining employees without additional significant training.

7

Whenever layoff becomes necessary in a job classification and shift, such layoff shall be affected as follows:

1. On-Call and Probationary employees on the shift shall be laid off first without regard to their individual periods of employment.

2. Non-probationary full-time and part-time employees on the shift shall be laid off next, the least senior laid off first, provided the remaining employees possess the necessary ability to perform the work at the level previously delivered by the Company and unless to be laid-off employee possess job-required skills not available otherwise at the sufficient level among the remaining employees without additional significant training.

### Section 11.3 – Layoff

In order to be considered for recall, the laid off employee must have furnished the Employer with his/her current address and telephone number. The Employer, prior to or upon an employee being laid off, shall request employee to provide Employer with employee's most current address and telephone number. The Employer shall also inform the employee in writing of his or her recall rights under the terms of this Agreement.

### Section 11.4 – Loss of Seniority

Seniority shall be broken and the employee will be considered to be terminated for any of the following reasons:

1. If the employee voluntarily quits.

2. If the employee is discharged for cause.

3. If the employee, upon recall from layoff, fails to return to work within five (5) days after the Employer has received notice that a certified letter has been delivered to the employee's last known address on file with the Employer.

If the employee fails to report to work at the expiration of a leave of absence pursuant to this Agreement.

### Section 11.5 – Call-Offs

When it is necessary to reduce the number of scheduled employees (call-off) due to a reduction in Patient Census, the Employer will call-off scheduled employees in the following order:

1. Volunteer in the classification and shift affected on any Unit;

2. On-call employees in the classification and shift affected;

3. Regular employees in the classifications, shift and unit affected in inverse order of seniority.

Employer shall have the right to retain employees it deems critical for providing care to the residents based on unique skills and qualifications such as IV treatment, wound

treatment, specific language residents speak and ability to play instruments or cook ethnic meals. Upon determining its needs, the Employer shall review the required abilities and then select the most senior employee who meets the Employer's needs.

# ARTICLE 12.          VACANCIES

### Section 12.1 – Post Vacancies
For the purpose of this Article, a vacancy is defined to mean any permanent job opening, other than entry level positions, which results from the creation of a new job by the Employer or any permanent opening on an existing job created by death, quit or discharge.

In the matter of promotions, merit and ability being equal, the principle of seniority shall prevail.

Notice of all vacancies within the bargaining unit shall be posted on the Union bulletin board for five (5) working days, excluding Saturday, Sunday and holidays. Any employee desiring to bid on the posted vacancy shall make application in accordance with the notice posted and sign the posting. New employees may be hired if there are no bidders meeting the requirements.

An employee who wishes to change shift or job classification will complete a pre-bid form. The pre-bid form constitutes a bid for thirty (30) calendar days.

### Section 12.2 - Return to Former Position
If the Employer in its sole discretion determines within thirty (30) calendar days after the vacancy is filled that the selected employee is not performing satisfactorily, the employee shall be returned to his/her former shift and classification or equivalent position as long as such worker is receiving equivalent pay.

### Section 12.3 – Temporary Positions
Nothing shall preclude the Employer from temporarily filling the opening until a permanent selection has been made.

### Section 12.4 – Limitation
Once an employee exercises his/her right to fill a job vacancy pursuant to the bidding procedure outline in this Article, he/she will be ineligible to apply for any other job vacancies that may develop for six (6) months thereafter.

# ARTICLE 13.          HOURS OF WORK

### Section 13.1 – No Guarantee of Hours
The provisions of this Article are intended only to provide a basis for determining the number of hours of work for which an employee shall be entitled to be paid at overtime

rates, and shall not be construed as a guarantee to any employee of any specified number of hours of work either per day or per week, or as limiting the right of the Employer to fix a reasonable number of hours of work, including overtime, either per day or per week for such employee.

## Section 13.2 – Pay Period
The regular payroll period is bi-monthly (two (2) times per month) with employee hours of work being compensated by the Employer from the first (1st) day of the month through the end of the fifteenth (15th) day of the month being paid to all employees on the twenty-fifth (25th) day of the month. For all employee hours of work from the sixteenth (16th) day though the last day of the month, said hours of work shall be compensated by the Employer on the tenth (10th) day of the month. The workweek shall, commence at 7am on Sunday and ends Sunday at 6:59am. The Employer will notify the Union of any change in the payroll period.

## Section 13.3 – Overtime
If an employee is required to work in excess of eight (8) hours per workday, forty (40) hours per workweek, or in excess of five (5) days per workweek, he/she shall be paid overtime at the rate of time and one-half (1-1/2). All time worked over twelve (12) hours in any one (1) workday shall be paid at two (2) times the employee's regular straight-time hourly rate of pay. Employees shall not be allowed to work overtime without the Employer's authorization.

## Section 13.4 – Consecutive Days of Work
Except by mutual agreement, no employee will be scheduled to work more than six (6) consecutive days in the workweek; he/she shall be paid at the rate of time and one-half (1-1/2) for the first eight (8) hours of work on the sixty (6th) consecutive day worked in the workweek and shall be paid at the rate of double time (2x) for any hours worked on the seventh (7th) consecutive day worked in the workweek.

## Section 13.5 – Days Off Work
Each regular employee working five (5) days or less per week shall receive two (2) consecutive days off each week, provided that the days off may be waived, split or rotated by mutual agreement. Such waiver must be in writing and signed by the employee and the supervisor prior to the change in scheduled days off.

## Section 13.6 – Work on Day Off
No employee shall be required to come to work on his/her day off, and shall not have his/her days off changed unless by mutual consent. Hours worked by an employee on his/her day off shall be paid at the appropriate rate as defined in this Article.

## Section 13.7 – Workweek
Each workweek commences at the beginning of the employee's shift on Sunday 7:00am and ends at 6:59am the following Sunday.

### Section 13.8 – Split Shifts

Eight (8) hours of work performed within a spread of more than nine (9) hours shall be considered a split shift and shall be compensated by the payment of an amount equal to the prevailing minimum wage paid in California in addition to the regular rate of pay.

### Section 13.9 – Posting of Schedules

A schedule of starting and quitting times and days off shall be posted two (2) weeks in advance. Changes may be made in the schedule by reason of illness or other unexpected absence or emergency. Changes in the schedule may be authorized only by the Administrator or appropriate Department Head.

### Section 13.10 – In-Service Programs

Time spent in mandatory in-service education provided at the facility shall be considered hours worked for the purpose of overtime calculation. Time spent in non-mandatory in-service education provided at the facility shall not be considered hours worked. Employees shall be given reasonable prior notice for in-service education classes when possible by posting in-service schedules on the break room bulletin board. Employer shall provide written notice to employees when a mandatory in-service is required. Such written notice shall be posted on the break room bulletin board.

### Section 13.11 – Shift Differential

A shift differential of fifty-five cents ($0.55) per hour shall be granted to all employees working the evening shift, which commences at or after 3:00pm and ends at 11:00pm. A shift differential of sixty cents ($0.60) per hour shall be granted to all employees working the night shift, which shift commences at or after 11:00pm. Such shift differential shall be paid only for hours worked.


## ARTICLE 14.        SAFETY AND HEALTH

The Employer agrees to provide a safe and healthful work environment for employees and to maintain high standards of work place sanitation, ventilation, cleanliness, light and noise levels, adequate heating and cooling and health and safety in general. The Union acknowledges its responsibility to promote health and safety and will cooperate with the Employer in striving to maintain such standards.


## ARTICLE 15.        WORKLOAD DISTRIBUTION

The Employer agrees with the principle of equitable workload distribution. The Employer will strive to maintain and utilize casual "on-call" employees in recognition of the principle of equitable workload distribution. Employees who wish to increase their hours shall have the right to add their names to an "on-call" list, which the Employer shall utilize in the event a scheduled employee is absent. It is understood that the assignment of additional hours shall not constitute or preclude overtime pay.

# ARTICLE 16.            JOB DESCRIPTIONS

The Employer will maintain job descriptions for all classifications covered by this Agreement. Upon request, job descriptions will be made available for inspection by an authorized Union Field Representative, duly appointed Shop Steward, or by an employee.

# ARTICLE 17.            WAGES

### Section 17.1 – Minimum Wage Rates
The hourly classification wages set forth herein by inclusion as Appendix "A" constitute minimum rates. Nothing contained in this Agreement shall prevent the Employer from paying wages in excess of those provided for herein.

### Section 17.2 – Change in Law
In the event that California or Federal Law is modified or amended during the term of this Agreement so that the law requires payment of wages higher than specified herein, the Employer shall comply therewith. In such event, the Employer may, at its option, maintain the appropriate wage scale differentials for employees in the categories commencing with "Over 1 Year" provided for in Appendix "A" of this Agreement, and if the Employer maintains such differentials and so notifies the Union, this Agreement will remain in full force and effect in all respects. If the Employer chooses not to maintain such differentials, either party may send written notice to the other of its desire to reopen this Agreement for negotiations on wages only.

### Section 17.3 – Certified Nursing Assistants
The Employer will comply with the provisions of California law concerning Certified Nursing Assistants.

### Section 17.4 – Call-in Pay
An employee who appears at the request of the Employer and is not provided with work shall be guaranteed a minimum of four (4) hours work or pay. An employee who works four (4) hours or more and is laid off through no fault of his/her own, shall be guaranteed eight (8) hours work or pay, provided that an employee regularly working less than eight (8) hours per shift shall be guaranteed work or pay for his/her normal shift.

### Section 17.5 – Work on Day Off
If an employee is called to work on what would otherwise have been a regularly scheduled day off and if the Employer fails to give one (1) hours' notice before the start of the required shift, the employee shall be paid for the hours work actually performed, plus one (1) hour, but is not to be paid more than eight (8) hours of pay in any one (1) shift.

**Section 17.6 - Payday**
All wages shall be paid on a bi-monthly basis; payday shall be on the tenth (10th) day and the twenty-fifth (25th) day of every month. If payday falls on a holiday recognized by this Agreement, paychecks will be issued the preceding day. If the payday falls on a Saturday, the paychecks will be handed out on Friday, the day before. If the payday falls on a Sunday, the paychecks will be handed out on the following Monday.

The Employer agrees to notify the Union in advance of a change in the pay period or paydays. Unless specific arrangements are made with either the Grove Street Business Office Specialist or the Administrator and only upon a showing of extraordinary circumstances, paychecks will be passed out to all employees of Grove Street Extended Care and Living Center at 2:00pm on the established payday.

# ARTICLE 18.          MISCELLANEOUS PROVISIONS

**Section 18.1 – Part-Time Employees**
Part-time employees shall receive pro-rated benefits of vacation, holidays, sick leave and funeral leave, as in Articles 19 (Vacation), 20 (Holidays), 21 (Sick Leave), and 23 (Bereavement Leave) of this Agreement based on the hours paid.

**Section 18.2 – Meals**
Employees working in the Dietary Department shall be entitled to the regular meals occurring within their shift, provided that there shall be no interruption of the work schedule. No payroll deductions will be made for such meals. On Fridays of every week during the term of this Agreement, the facility will make available to all employees, including the PM and NOC shifts, at no cost to the employees, a "Thank Goodness its Friday" meal of hot soup of the day, as determined by the Administrator and Dietary Supervisor.

**Section 18.3 – Standards Preserved**
No employee shall suffer any reduction in wages, benefits and other terms and conditions of employment, economic or otherwise, as a result of coverage under this Agreement.

# ARTICLE 19.          VACATION

**Section 19.1 - Vacation**
Regular full-time employees who have completed the required period of continuous service with the Employer during the twelve (12) month period prior to the most recent anniversary of his/her date of hire, shall become eligible for vacation with pay as provided herein below:

> One (1) week after one (1) year of continuous service.

> Two (2) weeks after two (2) years of continuous service.

Three (3) weeks after five (5) years of continuous service.

Four (4) weeks after ten (10) years of continuous service.

Regular part-time employees who have completed the required period of continuous service with the Employer during the twelve (12) month period prior to the most recent anniversary of his/her date of hire shall become eligible for fifty percent (50%) of the above mentioned vacation benefit.

## Section 19.2 – Vacation Preference

Regular employees, with the required period of continuous service, shall be given preference on the basis of seniority in the choice of vacation. Each employee shall submit no later than March 1st, his or her preference as to vacation periods requested and the Employer will respond within two (2) weeks of the March 1st date. For employees submitting vacation requests after the March 1st deadline, vacations will be granted on first come, first serve basis and the Employer will respond within one (1) week after the request is submitted with disputes settled on the basis of seniority.

Upon thirty (30) days advance written notice from the employee, vacation pay shall be made available to him/her on a separate check on the payday immediately preceding the start of the vacation period.

## Section 19.3 – Accumulation of Vacation

Vacations may be cumulative from year to year to a maximum of two (2) weeks. Such cumulative vacation shall be paid at the regular hourly rate of pay at which it was originally earned.

The Company may allow an employee, in writing, to accumulate vacation at a higher rate (higher cap) if the employee requested vacation in accordance with Section 19.2, but is required to provide services to the residents because the Company has no replacement for the employee; or, as maybe mutually agreed otherwise by employee and Company. The Employer shall make available vacation carryover forms to the employees. The intent is that employees who requested vacations in accordance with Section 19.2, shall not lose earned vacation due to lack of approval of requested time off.

The Employer shall make available to employees the information about their vacation balances within six (6) months after ratification of this Agreement.

## Section 19.4 – Termination

Any regular employee whose service terminates after ninety (90) workdays of service shall receive all vacation time accrued and/or earned to the last day worked.

## Section 19.5 – Holidays

If a holiday, as set forth in Article 20 (Holidays) of this Agreement, occurs during an employee's vacation period, he/she shall be granted an additional day of vacation with full pay or an additional day's pay, at the option of the employee.

## ARTICLE 20.                    HOLIDAYS

### Section 20.1 – Recognized Holidays

The following days shall be recognized as paid holidays, provided that the employee has completed his/her probationary period:

| | |
|---|---|
| New Year's Day | Labor Day |
| President's Birthday | Thanksgiving Day |
| Memorial Day | Christmas Day |
| Independence Day | Martin Luther King, Jr.'s Birthday (third Monday in January) |

For those employees hired prior to February 1, 2011, the employee's birthday will be recognized as a paid holiday and a Personal Day will be recognized as paid holidays. The employee will be required to notify the Administrator or designee two (2) weeks in advance of his/her birthday and the Personal Day, which will be recognized as a holiday.

### Section 20.2 – Eligibility

To be eligible for holiday benefits, an employee must work the last scheduled shift prior to the holiday and the first scheduled shift following the holiday, unless the employee that was absent furnishes a physician's statement verifying illness upon his/her return to work. Paid holiday time will be disallowed if the employee is on leave of absence, other than paid sick leave, if the holiday follows the last day on duty before termination due to resignation, or if the employee is participating in jury duty.

### Section 20.3 – Work on Holiday

If an employee is required to work on any of the aforementioned holidays, he/she will be paid an additional one (1) day's pay at the straight-time rate. By mutual consent, one (1) day off with pay may be granted in lieu of the additional payment. The optional day in lieu of payment shall be scheduled within thirty (30) days following the holiday.

If the holiday falls on the employee's regular day off, he/she will be granted another day off as a holiday or a day's pay will be granted in lieu thereof.

## ARTICLE 21.                    SICK LEAVE

### Section 21.1 – Accrual

Employees hired prior to February 1, 2011, shall accumulate sick leave at an accrual of .0462 per hour worked, to include paid sick hours, paid vacation hours, paid holiday hours, paid overtime hours and paid double-time hours, excluding paid funeral and jury duty. There is a maximum of thirty-six (36) days accrued sick leave credit but not to exceed twelve (12) days within a calendar year.

Other regular full-time and part-time employees shall accumulate sick leave at an accrual of one (1) hour for every thirty (30) hours worked up to a maximum of seventy-two (72) hours of accrued sick leave credit. Accruals shall be done in hour-unit increments and accrued sick leave hours shall not expire.

**Section 21.2 – Use**
Sick leave shall be payable at the rate of one (1) full day per day of illness. Payment will start on the first (1st) day of illness for employees who pass their ninety (90) day probation period.

**Section 21.3 – Notification of Unavailability**
The employee must notify the scheduler (or designee) of his or her unavailability to work. The employee must give such notification no later than by 7PM of the prior day for the AM shift; 11AM of the then current day for the PM shift; and 4PM of the then current day for the NOC shift, except in case of an emergency. In case of emergency, and if employee is expected to arrive after the beginning of his/her shift, the employee must also notify nurse supervisor within two (2) hours or as soon as practically possible. The Company may require employees to also notify the Administrator or his/her nominee but the employee is only required to notify one (1) person designated by the Employer. Employee shall be paid sick leave in accordance with the San Francisco Sick Leave Ordinance. Failing to notify the Company as specified above shall be subject to disciplinary actions.

If sick leave of absence is for three (3) or more days, a doctor's certificate must be furnished by the employee as support of the claim for sick leave payment.

**Section 21.4 – Cooperation with Infection Control Process**
Employee shall cooperate with Infection Control Process of Employer and report to Employer infection related symptoms and sicknesses. Employee shall also report to Employer any other medical condition that employee is aware of that may cause risk to the health of the residents. To protect residents and employees, Employer may require doctor's note to clear employee to if absence is due to infection related symptoms and sicknesses. A licensed medical professional must verify the infection control claim, and to do so, may inquire about the nature of the employee's sick leave.

**Section 21.5 – Integrated with State Benefits**
Sick leave payment shall be integrated with State Disability Insurance payments or Worker's Compensation benefits so that the total of daily benefits shall not exceed the employee's regular rate of payment on a daily basis.

# ARTICLE 22.                    HEALTH PLAN

The Employer shall provide all regular employees, working thirty (30) hours per week the option to participate in the health and dental plans as provided below.

Within ninety (90) days of ratification of this Agreement or effective January 1, 2019, if it is practically possible, the Employer shall offer the Kaiser HMO and CCHP Health Plan through the Health Care Employees Health Care Employers Trust or alternative insurance carrier providing more competitive rates (the "Medical Insurance Plan"). In the event the Employer, on a once (1) per plan year basis, believes another carrier can offer more competitive rates, it shall notify the Union and the Fund sixty (60) days prior to open enrollment, and meet and confer over the decision.

Within ninety (90) days of the ratification of this Agreement, the Employer shall offer a Delta PPO dental plan and VSP Vision plan through the Health Care Employees Trust Fund or alternative insurance provider offering more competitive rates (the "Dental and Vision Plans").

The Employer contribution for 2018 toward employee medical expenses shall be $2.83 per hour up to the maximum amount required by San Francisco Healthcare Security Ordinance ("Company Contribution"). The Employer contribution shall be adjusted as needed to comply with SF Health Care Security Ordinance.

The medical contribution amount shall be first made toward the Medical Insurance Plan and the remainder paid toward the Dental and Vision Plans. The employee shall be responsible to pay the difference between costs of the Plan(s), selected by employee, and the Company Contribution. The Company shall withhold such additional cost from the employee paycheck(s) and forward it to the insurance provider. Any current employee presently receiving "in lieu" pay for health benefits shall continue to receive it. Employee receiving qualifying health benefits through other employer or family member may, in accordance with SF Health Care Security Ordinance, voluntarily wave his/her right of receiving healthcare benefits from the Company.

Nothing in this Agreement shall prevent the Employer at its sole discretion from providing additional health benefits to employees.

## ARTICLE 23.          BEREAVEMENT LEAVE

When a death occurs in an employee's immediate family, the employee will be entitled to a leave of absence of two (2) days with pay. The two (2) day leave with pay may be extended for ten (10) additional days without pay for attendance at funerals at locations that are outside the State of California. Immediate family shall be defined as spouse, parent, brother, sister, son, daughter, or grandparent. The Employer may require proof of death and, if applicable, proof of attendance at a funeral ceremony outside the State of California as a condition of the payment of bereavement leave pay.

## ARTICLE 24.          JURY DUTY

A regular full-time employee with over ninety (90) days of continuous service who is called for jury duty will be paid the difference between the jury duty and his/her base hourly wage rate earnings for the scheduled workdays he/she is absent because of jury service starting on the third (3rd) day of such absence and for a maximum of five (5) paid days.

As a condition to jury pay, the employee must notify the Employer as soon as reasonable after he/she receives notice to report (normally within twenty-four (24) hours).

Also as a condition to receiving jury pay, the employee must produce a receipt from the Jury Commissioner that he/she has been called or served. The maximum period for payment on jury duty, as above, is not to exceed ten (10) days in any two (2) year period.

## ARTICLE 25.          REST PERIODS AND LUNCH PERIODS

All employees shall be entitled to a fifteen (15) minute paid rest period for each four (4) consecutive hours worked. However, two (2) paid rest periods shall be provided whenever an employee is required to work seven (7) or more hours in a day. Employees shall also be allowed a one-half (1/2) hour unpaid meal period scheduled as near as possible to the middle of the employee's shift in the event the shift is seven (7) hours or longer. Rest periods for the individual employee shall be scheduled by the Employer so as not to interfere with the Employer's operation. Rest periods and meal periods may be interrupted in case of emergency.

## ARTICLE 26.          LEAVE OF ABSENCE WITHOUT PAY

### Section 26.A.1 – Seniority and Benefits
Authorized leave of absence shall not previously accumulated sick leave, vacation time or seniority. No benefits or seniority shall accrue during an authorized leave of absence. An employee's seniority date shall not be adjusted for statutory leaves such as FMLA, CFRA, Workers' compensation, disability and military leave.

### Section 26.A.2 – Personal Leave
Personal leaves shall be requested at least two (2) months in advance to give Employer adequate time to arrange for replacement. Personal leaves shall be limited to thirty (30) days.

### Section 26.A.3 – Family Rights Leave
The parties agree to implement Family and Medical Leaves in accordance with the provisions of the Family and Medical Leave Act of 1993, Americans with Disabilities Act of 1991, FEHA and the California Family Rights Act of 1991 and the applicable regulars interpreting these statues.

18

Part-time and full-time employees who meet the eligibility requirements of the aforementioned Acts and/or the applicable regulations interpreting the statues shall be eligible for a leave of absence in the case of a personal medical disability occurring on or off the job, birth or adoption of child, or the medical disability of a child, spouse, domestic partner, or parent.

A leave of absence shall be requested in writing to the Employer with the specified leave duration indicated on the request. Said leave may be requested for successive period of thirty (30) days each up to a maximum of six (6) months. However, nothing will preclude the employee from requesting shorter or longer period than the ones specified in this paragraph.

An employee who is entitled to and meets the eligibility for a family and medical leave, will have the twelve (12) weeks of leave credited against the six (6) months family and medical leave if the leave is for the serious medical condition of the employee.

A healthcare practitioner's certificate shall be required to support the initial request and any extensions for family and medical leaves.

An employee returning from a family and medical leave shall be required to furnish a Health Care Practitioner's release verifying his/her ability to return to work and fulfill the job duties as assigned. The Employer may require an employee to submit to an examination by a designated physician at the employer's expense to verify the employees' ability to perform said job duties.

### Section 26.A.4 – Return from Leave
An employee on authorized physical disability leave of absence shall notify his or her immediate Department Head, Assistant Director of Nursing, Director of Nursing, or Administrator of his or her intention to return to work during the period between the tenth (10th) and fifth (5th) calendar day prior to the expiration of the leave.

The employee returning from a leave covered in this Article who provides at least a ten (10) day notice of intent to return to employment and returns to work within ten (10) days shall either be reinstated to his or her former position, shift, hours and pay or a comparable position, shift, hours and pay. The Employer shall not be obligated to provide special accommodations to employees and may request employee to provide doctor's note releasing employee to work in full capacity in the former position.

### Section 26.B – Accrued Educational Leave without Pay
After the completion of one (1) full year of service, employees shall begin to earn unpaid educational leave at the rate of twelve (12) hours per year. Accrued paid educational leave may be taken by full days or by hourly increments. Educational leave must be requested in writing at least one (1) month in advance. The request must include the course announcement prior to being paid education leave pay for the time educational leave may be used for programs which are related to the employee's current job, or jobs to which the employee can be expected to transfer or to promote.

# ARTICLE 27.　　　　　DISCIPLINE AND DISCHARGE

## Section 27.1 – Discharge

No employee shall be discharged except for just cause such as proven resident abuse or neglect, multiple medication errors or medication errors that endanger the life of the resident, gross negligence, misconduct, violations directly related to the facility receiving a DHS citation "G" or greater or crime at the workplace. Any grievance based upon the discharge of an employee, other than an employee in probationary status may be processed through the grievance procedure.

## Section 27.2 – Discipline

An employee may request the presence of a Union Representative or Shop Steward in meetings that involve disciplinary matters. The Union and the Employer agree to have an equal number of representatives at such meetings. The Facility shall apply progressive discipline and/or constructive measures in disciplining bargaining unit employees.

## Section 27.3 – Personnel Records

Disciplinary actions over one (1) year old will not be utilized in determining disciplinary action to be taken. Such disciplinary action can be utilized in arbitrations to establish prior disciplinary problems and knowledge of Company work rules.

Employees shall have the right to inspect their personnel files during normal business hours, in the presence of an authorized Employer Representative. An employee may request the presence of a Shop Steward or Union Representative, when inspecting his or her personnel files.

Employees may request an appointment with management to review and make written comments to any document, which is to be placed in the employee's personnel file. These comments shall become part of the official file. Employees shall have the right of representation of a Union Representative at any disciplinary meeting where discipline against the employee may result. No employee may be disciplined as the result of such a meeting where such employee was denied the presence of a Union Representative unless, if after making a good faith effort, the Employer is unable to secure representation.

# ARTICLE 28.　　　　　GRIEVANCE AND ARBITRATION

## Section 28.1 – Grievance Procedure

During the term of this Agreement, discharges and other disputes between the Employer and the Union involving the interpretation or application of the provisions of this Agreement shall be subject to adjustment of the matter in writing within ten (10) days from the date the incident occurred or shall be deemed waived. Any grievance based upon the discharge of an employee may be referred directly to Step 2 of the grievance procedure.

20

**Step 1**. Any employee who believes he/she has suffered a grievance through improper application or interpretation of this Agreement shall first attempt to adjust it through discussion with his/her supervisor, with the employee's Shop Steward present, if desired. The supervisor shall respond orally within seven (7) working days following the date of the Step 1 discussion.

**Step 2**. If the grievance cannot be resolved at Step 1, the Union shall submit the grievance in writing to the Administrator within five (5) working days of the Step 1 response. The Administrator or his/her designee may, by mutual agreement, meet with the Union to discuss the grievance within ten (10) working days from the receipt of the grievance. The Administrator or his/her designee shall response in writing within five (5) workdays from the date of a Step 2 meeting, or, if no meeting is held, within ten (10) workdays from the date of submission of the grievance to Step 2. Failure to reply within the time by the Employer or the Union is considered forfeiture. The grievance will therefore be considered resolved.

**Step 3**. If the grievance cannot be resolved at Step 2, it shall, within seven (7) working days, be submitted by the Union Representative to the Facility Manager or designee within seven (7) workdays after receipt of the answer in Step 2. The Facility Manager Vice President of Strategic Resources shall answer in writing within ten (10) workdays after receiving such grievance.

The decision made in Step 3 will be deemed to be the final settlement of the grievance, unless within seven (7) working days from the date on which such decision was rendered, the Union serves upon the Employer a written demand that such grievance be referred to arbitration.

**Step 4**. If the grievance is referred to arbitration, the parties shall request the Federal Mediation and Conciliation Service to submit a list of five (5) impartial arbitrators. From that list, within three (3) working days, the Union and the Employer, in that order, shall each alternately strike one (1) name until four (4) names have been eliminated and the person whose name remains shall be selected arbitrator. The award of the arbitrator shall be final and binding upon the parties to this Agreement.

The arbitrator shall have no power to add to, subtract from, modify or amend any provisions of this Agreement in any manner. He/She may decide only whether or not the Agreement has been violated or that discharge was not for just cause and the appropriate remedy under the Agreement, if any. The arbitrator shall render his/her decision within thirty (30) days of the date of the hearing.

The fees and expenses of the arbitrator shall be borne equally by the Employer and the Union.

**Section 28.2 – Time Limits**

Any grievance, which is not processed within the time limits, provided in this grievance procedure shall be deemed waived. In the event the Employer fails to process the grievance within the time limits, the Union may move the grievance to the next Step in the grievance procedure. In the event the Union fails to process the grievance within the time limits, the matter will be considered resolved. All extensions of the time limits shall be mutually agreed to in writing.

## ARTICLE 29.          NO STRIKE OR LOCKOUT

The Employer and Union agree that during the term of this Agreement, neither the Union nor any employee shall authorize, call, sanction, approve or engage in any strike, partial strike, sympathy strike, work stoppage, slowdown, picketing, or other interference with the Employer's operations. The Union and Employer further agree that during the term of this Agreement there shall be no lockout by the Employer.

## ARTICLE 30.          SUCCESSORSHIP

In the event of a transfer, sale or assignment of the Employer's facility, the Union shall be notified within sixty (60) days of that action and shall provide all contact information for the successor, and the Employer agrees continue to be bound to all terms and conditions of the Collective Bargaining Agreement up to the commencement date of the sale, transfer or assignment.

## ARTICLE 31.          SAVINGS CLAUSE

If any provision of this Agreement or the application of such provision to any person or circumstance be ruled contrary to law by any Federal or State court or duly authorized agency, the remainder of this Agreement or the application of such provision to other persons or circumstances shall not be affected thereby.

## ARTICLE 32.          SCOPE OF BARGAINING

The Employer and the Union acknowledge that during the negotiations which resulted in this Agreement, such party had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and the understandings and agreements arrived at by the parties after the exercise of that right and opportunity set forth in this Agreement.

## ARTICLE 33.                 EMPLOYMENT SECURITY

The Employer shall not contract out services where such services could routinely be performed by represented classifications at the quality level required by the DHS. This provision does not apply to temporary or emergency repair work, or uses of employment registry in case of short staffing.

Prior to any layoffs or reduction of hours during the life of the Collective Bargaining Agreement, the facility shall meet and negotiate with the Union in an effort to avoid layoffs or reduction of hours. This Section does not apply to daily adjustments to PPD, which is addressed in the call-off section of this Agreement.

## ARTICLE 34.                 NEUTRALITY AGREEMENT

In order to create an atmosphere of trust and mutual respect, and to establish a fair process for employees to exercise the choice to join or not to join a Union, the Union, Employer, and Facility Manager agree to the following:

If the Union seeks to represent company employees at any of the company's unorganized facilities or operations in San Francisco County, San Mateo County, Alameda County, Santa Cruz County, Sonoma County, Napa County, and Marin County California, the parties agree to the following:

1.      Union Representatives shall, upon proper notice to the facility and/or operation in the above listed Counties of Northern California, be permitted to enter the facility to speak with employees in non-work areas specifically limited to designated employee lunch and break areas during employees' meal and rest periods. Furthermore, the following conditions shall be observed:

   a.      Time limit of two (2) hours during the day shift; one (1) hour during the evening shift; and one (1) hour during the night shift.

   b.      Except for Election Day activities, only one (1) non-employee Union organizer shall be permitted in the facility at any one (1) time.

2.      The Union will conduct a positive campaign based on the potential benefits of unionization in improving conditions for worker, improving patient care and improving State reimbursement. Union organizers will not make negative, derogatory, or false statements about the company, its officers and agents, or otherwise single out the company, its officers and agents as being the cause of problems in the industry. The Union agrees that its organizers will not in any way impede or interfere with the normal operation of the facility and/or operation. The Union further agrees that its organizers and employee committee members will be fully informed as to

all the provisions of this Agreement and their responsibilities and obligations under the Agreement.

3. The Employer shall remain neutral and shall not oppose the organizing effort in any way. The Employer will not initiate any meetings, discussions, or conversations with employees on the subject of unionization. If asked, Employer Representative will state that employees have the right to join or not join Unions, that it is the employees' choice, and that the company has no position on the question and will respect the employees' decision. The company agrees that its facility administrators, department heads and supervisors will be fully informed as to the provisions of this Agreement and their responsibilities and obligations under the Agreement.

4. Representation petitions for new facilities will be filed with appropriate NLRB office and the NLRB will conduct elections within twenty-one (21) days of Union filing a petition for an appropriate unit.

5. Once employees have voted and the NLRB has published the result, neither party will object to, or appeal, the result.

6. If employees vote for Union representation, contract negotiations will begin within twenty-one (21) days of the election.

7. Disputes over the application of this Article shall be resolved by the parties by a prompt meeting (within eight (8) hours by telephone or in person) of representatives of the parties with authority to direct the behavior of their respective representatives and enter into binding agreements on behalf of their respective organizations. If a mutually acceptable resolution is not reached within twenty-four (24) hours, the dispute will be immediately referred to the FMCS said, if not thus resolved, to a pre-selected arbitrator for an expedited and binding resolution.

8. Nothing in this Article 34, in whole or in part, shall be construed as a voluntary recognition or endorsement of the Union, in any form whatsoever.

## ARTICLE 35.            SOLE AGREEMENT AND WAIVER

This Agreement constitutes the sole and entire Agreement between the parties and supersedes all prior Agreements, oral and written, and expresses all the obligations of, or restrictions imposed on, the respective parties during its term. This Agreement can be changed only by a written Amendment executed by the parties hereto. The waiver in any particular instance of any term or condition of this Agreement or any breach thereof shall not constitute a waiver of such term or condition or any breach thereof in any other instance.

## ARTICLE 36.                    EDUCATIONAL PROGRAM

A.    The Employer will provide the CDPH required in-services relevant to employee occupation and necessary for employee to enhance his/her knowledge and skills, assure continuing competency, and allow employee to obtain his or her required hours of In-Service Training/CEUs within the certification period in order to maintain in good standing his/her license or certification required by their respective classification in the bargaining unit.

B.    Company will provide CNA education and certification reimbursement program to employees who were continuously employed full-time with Employer for at least one (1) year. Company will refer employee to one (1) of the accredited CNA programs and, upon employee obtaining CNA license, will reimburse employee's cost of education up to one thousand dollars ($1000.00). Such reimbursement shall start after three (3) months of employee working as full-time CNA for the Company and will be paid in twelve (12) monthly installments, provided that employee maintains his/her continued full-time employment status with the Company.

C.    Company will provide LVN education and certification reimbursement program to employees who were continuously employed full-time with Employer for at least one (1) year. Company will reimburse employee's cost of the LVN education up to one thousand dollars ($1000.00). Such reimbursement shall start after three (3) months of employee working as full-time LVN for the Company and will be paid in twelve (12) monthly installments, provided that employee maintains his/her continued full-time employment status with the Company.

## ARTICLE 37.                    SOLE AGREEMENT AND WAIVER

This Agreement constitutes the sole and entire Agreement between the parties and supersedes all prior Agreements, oral and written, and expresses all the obligations of, or restrictions imposed on, the respective parties during its term. This Agreement can be changed only by a written Amendment executed by the parties hereto. The waiver in any particular instance of any term or condition of this Agreement or any breach thereof shall not constitute a waiver of such term or condition or any breach thereof in any other instance.

## ARTICLE 38.        TERM OF AGREEMENT

This Memorandum of Agreement shall be incorporated into the Collective Bargaining Agreement. The Collective Bargaining Agreement shall become effective on October 1, 2018 and continue in full force and effect until September 30, 2021. The Collective Bargaining Agreement shall be automatically renewed from year to year thereafter unless either party gives written notice of a desire to modify, amend, or terminate it at least ninety (90), but not more than one hundred and twenty (120) days prior to the expiration of this Agreement.

**FOR THE EMPLOYER:**
San Francisco Health Care and Rehab, Inc.

Svetlana Stukov
CEO

Date: 11/11/2019

**FOR THE UNION:**
SEIU Local 2015

Arnulfo De La Cruz
Executive Vice President, Region 5

Date: 12/11/19

Jim Philliou
Chief Negotiator

Date: 12/30/2020

# SEIU LOCAL 2015
## BARGAINING TEAM MEMBERS
### SAN FRANCISCO HEALTH CARE AND REHAB, INC.

Marjorie Nored

Maria Vega

Robertalee Virag

MA Gracelda Zalzos

## APPENDIX A                  WAGES

A.    **Initial Raises – Across the Board Raises**

Effective on the first (1st) of the calendar month following the ratification date (October 9, 2018) of this Memorandum of Agreement, the Employer shall implement the new Minimum Rates below for all full-time employees who successfully pass his/her probationary period.

Each employee shall receive the wage increase listed below or be brought to the Minimum Rate for his/her classification – whichever one is greater of the two (2).

Effective January 1, 2018, two percent (2%) across-the-board raises for all employees who were employed continuously full-time or part-time for twelve (12) months preceding January 1, 2018.

All other current employees who were continuously employed full-time or part-time twelve (12) months prior to the execution date of this agreement shall receive a two percent (2%) raise effective on October 9, 2018 (Ratification Date) of this Memorandum of Agreement.

**Effective on October 9, 2018** (Ratification Date) of this Memorandum of Agreement, an additional one percent (1%) raise for employees who were employed full-time or part-time for twelve (12) consecutive months and did not receive any negative performance write-ups (written warnings or worse) in the last twelve (12) months.

**Effective on October 9, 2018** (Ratification Date) of this Memorandum of Agreement, employees with more than ten (10) years of continuous full-time service (the attached list) shall receive at least one dollar ($1.00) above the New Hire Rate for his/her classification.

**Effective on October 9, 2018** (Ratification Date) of this Memorandum of Agreement, the Employer shall implement a ten (10) year step in dietary (dietary aides), prior to calculating the two percent (2%) and one percent (1%) adjustments above.

NOTE: If this Agreement is ratified by October 12, 2018, raises will take affect the first (1st) full pay period after October 1, 2018. Otherwise, it will take effect on the first (1st) of the next calendar month after ratification.

**MINIMUM RATES EFFECTIVE OCTOBER 9, 2018:**

| CLASSIFICATION | MINIMUM RATES |
|---|---|
| LVN | $20.00 |
| RNA/PT Aide | $15.00 |
| Activity Assistant (Hospitality Aides) | $15.00 |
| C.N.A. | $15.00 |
| PT Aide | $15.00 |
| Housekeeping/Dietary Aide/Laundry Worker/Central Supply & Maintenance | $15.00 |
| Cook | $17.00 |

B.      **2nd TERM RAISES**

Effective on the one (1) year anniversary of this Agreement (October 1, 2019), all full-time or part-time employees who were employed continuously for the previous twelve (12) months, will receive a two percent (2%) across-the-board raise.

Full-time or part-time employees can earn an additional one percent (1%) raise if they were continuously employed for the previous twelve (12) months and did not receive negative performance reviews during that twelve (12) month period.

C.      **3rd TERM RAISES**

Effective on the two (2) year anniversary of this Agreement (October 1, 2020), all full-time or part-time employees who were employed continuously for the previous twelve (12) months, will receive a two percent (2%) across-the-board raise.

Full-time or part-time employees can earn an additional one percent (1%) raise if they were continuously employed for the previous twelve (12) months and did not receive negative performance reviews during that twelve (12) month period.

D.      **C.N.A. YEARS OF CONTINUOUS SERVICE – TOP-OFF:**

The Company shall adjust the overall by-monthly gross pay of all continuously employed full-time C.N.A., L.V.N., and R.N.A. employees, including the overtime the overtime to be no less than the total number of hours worked during the pay period times:

5 years or more   = $1.00 above the hire rate

10 years or more = $2.00 above the hire rate

15 years or more = $3.00 above the hire rate

20 years or more = $4.00 above the hire rate

25 years or more = $5.00 above the hire rate

30 years or more = $6.00 above the hire rate

40 years or more = $7.00 above the hire rate

E.  **WORK PARTIAL SHIFT (4 HOURS), LONGER SHIFT (12 HOURS) AND MORE THAN FIVE (5) DAYS PER WEEK:**
Nothing in this Agreement shall prevent employees from working Partial Shifts (ex. Four (4) hours), Longer Shifts (ex. Twelve (12) hours) or more than five (5) days per week, providing that the Company and employee mutually agree on such schedule. The Company shall pay the employee overtime in accordance with the federal and state laws.

Employee working partial shift or longer shift, shall assume regular job responsibilities of such employee's job classification (i.e. take regular assignment), unless the Company and the employee mutually agree on employee performing different tasks.

F.  **QUALITY BONUSES**

1.  **Survey Bonus**
Company shall give each full-time employee working all scheduled shifts during the survey period and not receiving negative write-up's, a "Survey Bonus" in the amount of one hundred dollars ($100.00) if the Company passes the Annual Medical/Medicare Recertification Survey(s) with no medication errors and no deficiencies indicating substandard quality of care (i.e. "G" or worse). Part-time employees shall receive fifty percent (50%) of the above mentioned bonus. This Bonus shall be paid within thirty (30) days after CDPH accepts Company's Plan of Correction (i.e. Form 2567).

2.  **"STARS" Bonus**
Company shall give each full-time employee, working continuously for at least twelve (12) months and having less than two (2) negative performance write-ups, a "Star" bonus in the amount of one hundred dollars ($100.00), if facility achieves "4-Star" rating and one hundred and fifty dollars ($150.00), if the facility receives a "5-Star" rating. Part-time employees shall receive fifty percent (50%) of the above mentioned bonus. This Bonus shall be paid within thirty (30) days after the Star rating is published.

3.  **"PATIENT CARE" Bonus**
Company shall give each full-time C.N.A. and R.N.A. employee, working continuously for at least twelve (12) months and having less than two (2) negative performance write-ups, a "Patient Care" bonus in the amount of one hundred dollars ($100.00), if the facility receives less than two (2) deficiencies in the calendar year resulted from patient care issues in the

30

current calendar year. This Bonus shall be paid within thirty (30) days after the year end.

**PERFORMANCE DIFFERENTIAL**

(*) The Company shall pay an additional one dollar ($1.00) per hour "Performance Differential" above the New Hire Rate to full-time employees in C.N.A., R.N.A., and L.V.N. job classification who completed twelve (12) months of continuous service, provided all of the below conditions hold true:

1. Employee worked no more than eight (8) hours per day and forty (40) hours per week, during the pay period;

2. Employee did not miss any scheduled workdays during the pay period (unless the Employer requests the employee to leave early);

3. Employee was not late to the start of the work assignment (there is a seven (7) minute grace period) and did not leave the work assignment early (unless the Employer requested the employee to leave early);

4. Employee did not receive negative performance reviews during the pay period and did not receive two (2) or more negative performance reviews in the prior six (6) months;

5. Employee maintains in good standing his/her professional license, CPR certification, physical and TB test.

The Performance Differential shall be inclusive of the shift differentials

Nothing in this Agreement shall prevent the Company from offering employees higher rates.

If the Employer gives raises above the minimum, those raises will be counted against the annual two percent (2%) and one percent (1%) rates. The Company shall notify the employee and Union of such occurrence(s).

31

# Who is
## seiu 2015
### California's Long Term Caregivers

SEIU Local 2015 is a diverse, ethical, and transparent 21st Century worker organization leading with vision, understanding, clarity, and agility. SEIU Local 2015 unleashes the collective power of long term care workers, their families, and their communities, harnesses the power of technology, and is building a broad movement to disrupt the unjust status quo in order to bring lasting transformational change towards a more just society for all.





Yes We Can!



## Long Term Care

We work in home care, skilled nursing facilities and assisted living centers

## Statewide

We harness the power of 350,000 caregivers and our communities

## Everyone is Valued

We are proud of our diversity and communicate in 8+ languages

# When we are united, together we rise!



## Overtime Pay for Home Care Workers



## Safe Staffing to Ensure Quality Care and Quality Jobs

## Raising the Minimum Wage to $15 Statewide



## Fair Contracts for Long Term Care Workers









Learn more about our wins by visiting www.seiu2015.org
If you have questions, please call the Member Action Center: 1-855-810-2015

# STEPS TO BUILDING
# POWER

## BECOMING A PART OF HISTORY



Make your mark with SEIU Local 2015. We have a track record of winning when we are united as workers and in our communities. Whether it's dignity and respect on the job, better wages and benefits or fighting for staffing that helps us provide the best care, we win when everyone invests and participates in our union. Together We Rise!

## STRENGTHENING OUR VOICE



Dues help strengthen our voice, and are the monthly investment that members make to:

* Win improvements on the job and in our communities;
* Learn how to represent themselves and their co-workers;
* Get the training needed to be confident leaders;
* Organize and build power with caregivers and promote standards in our industries.

## PROTECTING OUR FUTURE



We are committed to continuing to invest in building a powerful union that can win for caregivers and our communities. Efforts to strip families of access to affordable health care, slash crucial federal funding, and roll back worker's rights to organize have created a chaotic environment for working families. During these unpredictable times, we must work together to confront these challenges.

## BUILDING OUR POWER



C.O.P.E = Power

C.O.P.E, the Committee On Political Education, is one way we grow power for working people together. This voluntary contribution by members to our political work is essential to ensuring the dignity that long term care workers deserve, including quality jobs, retirement security, livable wages, and healthy communities.

# seiu 2015

# UNION SECURITY NOTICE

Every employee working under an SEIU Local 2015 ("Local 2015" or the "Union") collective bargaining agreement is entitled to hold membership in the Union. To be a member in good standing of the Union, you must meet your financial obligations to the Union under the SEIU Local 2015 Constitution and Bylaws. You can become a member by working in a bargaining unit covered by a Local 2015 collective bargaining agreement and paying the full Union dues rate. However, we recommend that you fill out and sign the attached membership card to confirm your Union membership. Additionally, we recommend that you fill out and sign the attached payroll deduction authorization card, as it is the easiest way to ensure that you satisfy your financial obligation to the Union each month.

Union membership is a valuable benefit. Union members – and only Union members – are entitled to run for and hold Union office, to serve as shop stewards, to elect Union officers, to elect shop stewards, to attend Union meetings, to ratify collective bargaining agreements, and to vote on constitutional changes (for example, changes to the dues structure), or on other matters of union governance. The Union also provides seminars and other training opportunities, some of which are open only to Union members, and union membership is required to participate in other benefits (for example, the Union Plus Program, which provides qualified SEIU members with mortgage and disability assistance, credit counseling, disaster relief, and discounts on wireless service, computers and numerous other consumer items and services). Moreover, the greater the participation of all Union employees, the stronger the Union; the stronger the Union, the better position we are in to negotiate better wages, benefits, and working conditions.

If you prefer not to become or remain a member of the Union and to forfeit these important benefits of Union membership, you have a right to not be a member of the Union. As an employee working under a Union security or agency fee agreement, however, even if you choose not to become a member or you resign your Union membership you will be required to pay periodic fees to the Union as a condition of employment. These fees are your fair share of sustaining the Union's collective bargaining and other programs that support you, your fellow Union members, and all working families. Each non-member may be charged a fee up to an amount that is equal to the periodic amount of regular membership dues and initiation fee (unless you have already paid the initiation fee). However, each nonmember has the further right to object and pay a fair share fee limited to his or her proportionate share of the Union's expenditures for collective bargaining, contract administration, grievance adjustment, contract enforcement, and other activities germane to the Union's duties as bargaining representative (called "representational activities"). This reduced fee is called an "Objector fee." Non-members also have a right to obtain from the Union sufficient financial information to enable them to decide whether to object to paying for expenses that are not germane to representational activities, to challenge the Union's calculation of the Objector fee, to have such challenges resolved in a prompt manner by a neutral, third-party arbitrator, and to be informed of the procedures for filing and resolving such challenges. If you would like to be a non-member and pay this Objector fee instead, you must send an Objection letter, personally signed by yourself, to Membership Dept, SEIU Local 2015, 2910 Beverly Blvd., Los Angeles, CA 90057- 1003, stating that you object to supporting Union activities unrelated to collective bargaining. Such Objection letter must include your name, mailing address, facility name, daytime telephone number where you can be reached, and the last four digits of your social security number. If you provide this notice of your desire not to be a Union member, the Union will continue to represent you fairly and will send you a periodic fee notice that informs you of the amount of the fee for the upcoming fee year, of your right to object to paying for Union activities that are not germane to representational activities, of the basis for the Union's calculation of the Objector fee, of your right to challenge that calculation, of the procedure for exercising these rights to object and to challenge, and of other related matters.

An employee who chooses not to be a Union member forfeits valuable rights. We therefore strongly encourage you to protect the fruits of collective bargaining by remaining an active member of the Union. Whether you pay dues as a Union member or choose to pay fees as a non-member, you will be required to pay your dues or fees on a monthly basis. The easiest way to ensure you are in compliance with this requirement is to sign the portion of the attached document entitled "Authorization Form" so that your employer can deduct the required dues or fees directly from your paycheck. If you do not authorize these deductions, then you will be responsible for providing the Union with payment directly on a month-to-month basis.

**BUILDING OUR POWER** (Continued)

SEIU Local 2015 Membership entitles you to full Membership rights in the union, including the right to attend union meetings, vote to ratify union contracts, vote in union elections hold union office, vote on constitutional changes or other matters of union governance.

## Please provide printed name and contact information below

FOR OFFICE USE ONLY

RECRUITER:

**ROLODEX ID:**

RECRUITER ROLODEX ID:

**NAME:**

**EMPLOYER NAME (OR ANY SUCCESSOR):**

**EMPLOYER ADDRESS:**

**SUBCONTRACTOR (IF APPLICABLE):**                    **DATE OF BIRTH:**

**JOB CLASSIFICATION:**

**HOME PHONE:**                    **CELL PHONE:**

*By including your mobile phone number you are authorizing SEIU Local 2015 and it's affiliates, using various technologies, to call you and send texts alerts to you. We will never charge you for text messages alerts, but carrier message and data rates may apply. Reply STOP at anytime to any text from us to stop receiving messages or reply HELP for more information.

**ADDRESS:**

**CITY:**                    **ZIP CODE:**

**EMAIL:**

**DO YOU WORK AT ANY OTHER FACILITES?**    ☐ YES    ☐ NO

**FACILITY NAME:**

**NAME USED AT FACILITY:**

**ARE YOU AN IHSS WORKER?**    ☐ YES    ☐ NO

**COUNTY:**

# WEINGARTEN RIGHTS

## WE HAVE RIGHTS!

Because of the 1975 U.S. Supreme Court case, NLRB v. Weingarten, Inc., the court ruled that all workers have the right to union representation when a supervisor or employer asks for information that could be used as the basis for discipline.  Weingarten rights can be a powerful tool to help defend Local 2015 members' rights.  But remember, these rights are worthless if you don't enforce them on the job! When it comes to your Weingarten rights, your employer has no duty to tell you about your rights, so it's up to you to know them!

## WHAT YOU NEED TO KNOW:

If you are ever called into an interview/meeting with your supervisor so he or she can investigate a situation which might result in discipline, you have specific representational rights:

- You have the right to have a union representative or steward present.
- If you want a union representative there, you must ask him or her.
- If you do not know why your manager wants to meet with you, ask him or her if it is a meeting that could result in discipline. You have the right to speak privately with  your union representative before and during the meeting.
- If your manager refuses to allow you to bring a union representative, repeat your request in front of a witness. Do not refuse to attend the meeting, but do not answer any questions either. Take notes. Once the meeting is over, call your union steward at once!
- Your steward has the right to play an active role in the meeting. He or she is not just a witness.

## WHAT TO DO IF IMMIGRATION COMES TO YOUR WORKPLACE



**1. DON'T RUN**

Stay calm and don't run.
Running may be seen as an admission of guilt.



**2.  DON'T CARRY FALSE DOCUMENTS**

Providing false documents to ICE may result in deportation and criminal charges.



**3.  DON'T INTERFERE WITH ICE AGENTS**

Interfering with ICE agents during a workplace raid may expose you to criminal charges.



**4. DON'T SIGN ANYTHING YOU DON'T WANT TO SIGN OR DON'T UNDERSTAND**

Think twice before signing anything without talking to a lawyer. Signing a paper may end up being an agreement to voluntarily leave the United States. Consulting with a lawyer before signing anything is the best way to protect your rights.



**5.  YOU HAVE THE RIGHT TO REMAIN SILENT**

You have the constitutional right to remain silent and to refuse to answer questions.



**6.  KEEP IMPORTANT NUMBERS WITH YOU**

Keep the phone number of your union and legal services provider with you.

KNOW YOUR RIGHTS!

seiu
2015
Seiu2015.org



## SAN FRANCISCO HEALTH CARE AND REHABILITATION
## CONTRACT EXTENSION

It is hereby agreed San Francisco Health Care (the "Employer") and SEIU Local 2015 (the "Union') as follows:

1. The Employer and the Union agree to extend the existing collective bargaining agreement currently in effect, October 1, 2018 until September 30, 2021. On a month to month calendar days from the date the parties sign this extension, or through the close of business on the date the parties commence bargaining or, whichever time period is longer.

2. The Employer and the Union agree to continue to be bound by all the terms and conditions of the extended  collective bargaining agreement

Signed,

_____        12/9/2021
For the Union.                                                      Date

_____Stan Stukov, VP_____        12/4/2021
For the Employer.                                                Date

# EXHIBIT B

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

SAN FRANCISCO HEALTH CARE AND REHAB INC, a California
Corporation; and DOES 1 through 20, inclusive;

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JAMIE JOHNSON, individually, on a representative basis, and on
behalf of all others similarly situated;

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Francisco Superior Court | CASE NUMBER:<br>*(Número del Caso):* |
|---|---|
| 400 McAllister Street<br>San Francisco, CA 94102 | ~~CGC-22-597785~~ |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Brian J. Mankin, Esq., LAUBY, MANKIN & LAUBY, LLP, 4590 Allstate Drive, Riverside, CA 92501; 951-320-1444

| DATE: **01/26/2022**<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | **KAREN VALDES** | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

    San Francisco Health Care

3. [X] on behalf of *(specify):* and Rehab Inc, a California

    under: [X] CCP 416.10 (corporation)     Corporation
    - [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.60 (minor)
    - [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.70 (conservatee)
    - [ ] other *(specify):*  [ ] CCP 416.90 (authorized person)

4. [ ] by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

# EXHIBIT C

ELECTRONICALLY
FILED
Superior Court of California,
County of San Francisco

01/24/2022
Clerk of the Court
BY: KAREN VALDES
Deputy Clerk

1  Brian J. Mankin, Esq. [CSB No. 216228]
   *brian@lmlfirm.com*
2  Peter J. Carlson, Esq. [CSB No. 295611]
   *peter@lmlfirm.com*
3  LAUBY, MANKIN & LAUBY LLP
   4590 Allstate Drive
4  Riverside, CA 92501
   Tel: (951) 320-1444
5  Fax: (951) 320-1445

6  Attorneys for Plaintiff, on a representative basis and on behalf of all others similarly situated

7

8                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     FOR THE COUNTY OF SAN FRANCISCO

10                                                            CGC-22-597785

11 | JAMIE JOHNSON, individually, on a          | Case No.:
   | representative basis, and on behalf of all  |
12 | others similarly situated;                  | **COMPLAINT**

13 |              Plaintiff,                      | **CLASS ACTION CLAIMS**
   |                                              | (1)  Failure to Pay Minimum Wages;
14 |         vs.                                  | (2)  Failure to Pay Overtime Wages;
   |                                              | (3)  Failure to Provide Meal Periods;
15 | SAN FRANCISCO HEALTH CARE AND                | (4)  Failure to Provide Rest Breaks;
16 | REHAB INC, a California Corporation; and     | (5)  Failure to Timely Pay Final Wages;
   | DOES 1 through 20, inclusive;                | (6)  Failure to Provide Accurate Itemized
17 |                                              |      Wage Statements;
18 |              Defendants.                     | (7)  Unfair and Unlawful Competition;

19 |                                              | **JURY TRIAL DEMANDED**

20

21     Plaintiff Jamie Johnson ("Plaintiff") on behalf of herself, on a representative basis, and

22  on behalf of others similarly situated, complains and alleges as follows.

23  **I.    INTRODUCTION AND GENERAL ALLEGATIONS**

24     1.    Plaintiff brings this action against his former employer(s), Defendants San

25  Francisco Health Care and Rehab Inc and DOES 1 through 20, inclusive, (collectively,

26  "Defendants") on behalf of all current and former nonexempt employees employed by

27  Defendants in California (the "Class" or "Represented Employees"), for Labor Code violations

28  stemming from Defendants' failure to pay all wages owed, including minimum, regular, and

1    overtime wages, failure to provide meal periods, failure to provide rest breaks, failure to timely

2    pay wages upon separation of employment, and failure to provide accurate itemized wage

3    statements.

4    2.    Plaintiff was employed by Defendants from approximately April through

5    September 2021.

6    3.    Plaintiff alleges on information and belief that the Represented Employees were

7    subjected to the same policies, working conditions, and corresponding wage and hour violations

8    to which Plaintiff was subjected during employment.

9    4.    Plaintiff and the Represented Employees were not provided all minimum, regular,

10   and overtime wages due to Defendants' failure to accurately record and compensate for all hours

11   worked. As one such example, Defendants required Plaintiff and the Represented Employees to

12   undergo mandatory temperature checks and screenings prior to clocking in for payroll purposes.

13   However, because this time was spent under Defendants' control but before being allowed to

14   clock in, it was uncompensated in violation of California law and led to minimum, regular, and

15   overtime wage violations. See *Troester v. Starbucks Corporation* (2018) 5 Cal.5th 829

16   (California law "do[es] not allow employers to require employees to routinely work for minutes

17   off the clock without compensation"); See also *Frlekin v. Apple Inc.* (2020) 8 Cal.5th 1038 (tasks

18   are compensable when employee is under company's control and where the tasks served the

19   employer's interests).

20   5.    Additionally, Defendants frequently failed to pay proper minimum, regular, and

21   overtime wages to Plaintiff and the Represented Employees due to the practice of automatically

22   deducting 30 minutes from each shift, regardless of whether a meal period occurred. To

23   illustrate, Plaintiff often worked 9.5 hours without a meal period, and no meal period was

24   recorded in Defendants' timekeeping system. Yet, on these and similar occasions, Defendants

25   only paid for 9 hours of work despite that no meal period was taken or recorded, and without

26   making any inquiry into whether a compliant meal period occurred. This resulted in a failure to

27   pay minimum/regular wages (since Plaintiff was not paid at all for those 30 minutes), as well as a

28   failure to pay overtime wages (since those 30 minutes were in excess of 8 hours and had to be

1  paid at the proper overtime rate). Thus, Defendants failed to pay proper minimum, regular, and
2  overtime wages every time it applied its auto-deduct practice.

3      6.      Also, at all relevant times, Plaintiff and the Represented Employees were paid on
4  an hourly basis but were entitled to and did receive additional nondiscretionary compensation
5  (such as shift differentials) However, during workweeks where the Represented Employees
6  worked overtime hours and earned additional nondiscretionary compensation, Defendants failed
7  to include that compensation in the calculations for the regular rate of pay and instead paid
8  overtime at only 1.5 times the base rate of pay – violating the well-established rule that overtime
9  must always be paid at time and one-half the regular rate of pay.

10     7.      Plaintiff and the Represented Employees were also denied 30-minute off-duty
11 meal periods, as mandated by California law. As a result of Defendants' policies and practices,
12 the Represented Employees were subjected to meal period violations when they were: (1) unable
13 to take a meal period due to workload, (2) forced to take an on-duty meal period while under the
14 control of the Company, (3) forced to take a shortened meal period, (4) forced to take a meal
15 period after the 5th hour of work, and (5) not provided a mandated second meal period for shifts
16 in excess of 10 hours.

17     8.      Defendants also failed to provide Plaintiff and the Represented Employees with
18 10 minutes of net rest break time for every 4 hours worked, or major fraction thereof, as
19 mandated by California law. Defendants did not schedule rest breaks, the Represented
20 Employees were unable to leave the premises for rest breaks, and the Represented Employees
21 were often not authorized and/or permitted to take mandated rest breaks due to being
22 overwhelmed by their hectic workload. Furthermore, on occasions when Plaintiff and the
23 Represented Employees worked longer shifts, Defendants failed to authorize and/or permit
24 mandated third or fourth rest breaks.

25     9.      Plaintiff also alleges that she and the Represented Employees were not paid all
26 wages due and owing each pay period (Labor Code § 204) and upon separation of employment
27 within the time required by Labor Code §§ 201 – 203. Plaintiff further alleges that Defendants
28 engaged in the practice of failing to pay all wages due and owing to Plaintiff and the Represented

1  Employees at the time their employment ended with Defendants, including, but not limited to
2  minimum, regular, and overtime wages, wage premiums, vacation wages, among others.

3       10.    Plaintiff further alleges that Defendants failed to provide accurate itemized wage
4  statements that fully complied with the requirements of Labor Code § 226(a).

5       11.    Plaintiff alleges that Defendants' violations of the wage and hour components of
6  the Labor Code and IWC Wage Orders enabled them to decrease expenses and to increase their
7  level of productivity and profits, thereby allowing Defendants to gain an unfair advantage over
8  its competitors.

9       12.    At all material times, Defendants and DOES 1 through 20 were and/or are the
10  Represented Employees' employers or persons acting on behalf of the Represented Employees'
11  employer, within the meaning of California Labor Code § 558, who violated or caused to be
12  violated, a section of Part 2, Chapter 1 of the California Labor Code or any provision regulating
13  hours and days of work in an IWC Wage Order and, as such, are subject to penalties for each
14  underpaid employee as set forth in Labor Code § 558 and under California law.

15       13.    Plaintiff brings this lawsuit seeking declaratory, injunctive, equitable, and
16  monetary relief against Defendants and each of them, on behalf of herself and the Represented
17  Employees to recover, among other things, unpaid wages and benefits, interest, attorneys' fees,
18  penalties, costs and expenses pursuant to California Labor Code §§ 200, 201, 202, 203, 204, 208,
19  210, 218.6, 226, 226.3, 226.7, 510, 512, 558, 1194, 1194.2, 1197, 1197.1, 1198, and 1199,
20  among possibly other sections inadvertently omitted. Plaintiff also reserves the right to name
21  additional representatives throughout the State of California.

22       14.    Pursuant to Labor Code § 2699.3(a), Plaintiff is in the process of giving written
23  notice by online filing to the Labor and Workforce Development Agency ("LWDA") and by
24  certified mail to Defendants of the specific provisions of the Labor Code alleged to have been
25  violated, including the facts and theories to support the alleged violations. As such, Plaintiff
26  reserves the right to amend this complaint or bring a separate complaint for the PAGA claims
27  pursuant to Labor Code § 2699.3(a)(2)(C).

28    / / /

**II.   JURISDICTION**

15.   This Court has jurisdiction over the claims for relief of Plaintiff and the Represented Employees pursuant to the Labor Code and the IWC Wage Orders.

**III.   VENUE**

16.   Venue as to each Defendant is proper in this Court pursuant to Code of Civil Procedure § 395(a).  Defendants transact business in San Francisco County and the unlawful acts alleged herein have a direct effect on Plaintiff and the Represented Employees in San Francisco County.  Furthermore, Defendants employed or employ Plaintiff and Represented Employees in San Francisco County.

**IV.   PARTIES**

**Plaintiff**

17.   Plaintiff and Class Representative Jamie Johnson was employed by Defendants from approximately April through September 2021 and performed work for Defendants in San Francisco County.

**Defendants**

18.   Plaintiff is informed and believes and thereon alleges that Defendant San Francisco Health Care and Rehab Inc is a California Corporation authorized to and doing business in San Francisco County, California.  Plaintiff is also informed and believes that Defendant San Francisco Health Care and Rehab Inc is and/or was the legal employer of Plaintiff and the Represented Employees during the applicable statutory periods.

19.   Plaintiff is ignorant of the true names, capacities, relationships, and extent of participation in the conduct herein alleged, of Defendants sued herein as DOES 1 through 20, inclusive, but on information and belief alleges that those Defendants are legally responsible for the payment of penalties and damages to Plaintiff and all Represented Employees by virtue of Defendants' unlawful actions and practices and therefore sue these Defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of the DOE Defendants when ascertained.

///

20.     Plaintiff is informed and believes and thereon alleges that she and the Represented Employees worked under the joint direction and control of Defendants and that Defendants, and each of them, acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respect pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants. On information and belief, a unity of interest and ownership between each Defendant exists such that all Defendants acted as a single employer of Plaintiff and other Represented Employees.

21.     Furthermore, Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, are an integrated enterprise and should be treated as a single employer because these entities share an interrelation of operations, with common human resources and personnel policies and shared common offices and facilities. Additionally, Defendants also have a shared website, common management, a centralized control of labor operations, and common ownership or financial control.

22.     Plaintiff is informed and believes and thereon alleges that, in conducting themselves in the manner described herein, Defendants, and each of them, were acting in active concert with one another such that the acts of each were and are fully attributable to the others in all material respects. Plaintiff is further informed and believes that at all relevant times Defendants and each of them are now, and at all material times herein mentioned were, the agents, servants, employees, partners, affiliates, and/or representatives of each of their remaining co-Defendants, and were, at all times herein mentioned, acting within the course, scope, and purpose of such relationship(s) and with the knowledge, consent and/or ratification of each of their remaining co-Defendants.

23.     Plaintiff is further informed and believes that at all relevant times, Defendants have been inadequately capitalized to conduct business, have failed to follow appropriate corporate formalities, and have simply been a shell and instrumentality through which Defendants DOES 11 through 20, inclusive, have conducted their personal affairs. Accordingly, the corporate veil should be pierced, and any liability attached to Defendants should be imposed jointly and severally against Defendants DOES 11 through 20. Adherence to the fiction of the

1 │ separate existence of these corporate entities would permit abuse of the corporate privilege,

2 │ thereby sanctioning fraud and promoting injustice.

3 │ **V.    CLASS ACTION ALLEGATIONS**

4 │       24.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully

5 │ alleged herein.

6 │       25.    Plaintiff brings this action on behalf of herself and all others similarly situated as

7 │ a class action, pursuant to Code of Civil Procedure § 382.

8 │       26.    The relevant time period for this class action is defined as the period beginning

9 │ four years prior to the filing of this action until class certification (the "Relevant Time Period").

10 │       27.    The Class, also referred to as the "Represented Employees," that Plaintiff seeks to

11 │ represent is defined as follows:

12 │                     All current and former nonexempt employees employed by

13 │                     Defendants in California during the Relevant Time Period.

14 │       28.    Plaintiff also seeks to represent the following subclasses:

15 │             **Meal Break Subclass**

16 │                     All Represented Employees who worked a shift in excess of

17 │                     5 hours during the Relevant Time Period.

18 │             **Rest Break Subclass**

19 │                     All Represented Employees who worked a shift of at least

20 │                     3.5 hours during the Relevant Time Period.

21 │             **Waiting Time Penalties Subclass**

22 │                     All Represented Employees who separated from their

23 │                     employment with Defendants during the period three years

24 │                     before the filing of this action and ending when final

25 │                     judgment is entered.

26 │ ///

27 │ ///

28 │ ///

1

**Wage Statement Penalties Subclass**

2             All Represented Employees during the period one year

3             before the filing of this action and ending when final

4             judgment is entered.

5      29.     Plaintiff reserves the right to amend or modify the class description with greater

6 specificity or further division into subclasses or limitation to particular issues as appropriate.

7      30.     Plaintiff, as Class Representative, is a member of the class and subclasses that she

8 seeks to represent.

9      31.     This action has been brought and may properly be maintained as a class action

10 under Code of Civil Procedure § 382 because there is a well-defined community of interest in the

11 litigation and the proposed class is easily ascertainable from Defendants' records.

12      32.     **Numerosity:** The potential members of the Class as defined are so numerous that

13 a joinder of all Represented Employees is impracticable. Although the exact number is currently

14 unknown to Plaintiff, this information is easily ascertainable from Defendants' records.

15      33.     **Commonality:** There are questions of law and fact common to the class which

16 predominate over any questions affecting only individual members of the class, including

17 without limitation:

18          i.      Whether Defendants violated the California Labor Code and applicable

19 IWC Wage Order by failing to pay wages to Plaintiff and the Represented Employees for all

20 hours worked;

21          ii.      Whether Defendants violated the California Labor Code and applicable

22 IWC Wage Order by failing to pay proper overtime wages to Plaintiff and the Represented

23 Employees for hours above 8 and/or 12 per day and/or 40 per week;

24          iii.      Whether Defendants violated the California Labor Code and applicable

25 IWC Wage Order by failing to provide compliant meal periods to Plaintiff and the Meal Break

26 Subclass and whether Defendants failed to compensate Plaintiff and the Meal Break Subclass

27 with one additional hour of wages at the regular rate of pay for each instance when a compliant

28 meal period was not provided;

1           iv.     Whether Defendants violated the California Labor Code and applicable

2 IWC Wage Order by failing to provide compliant rest breaks to Plaintiff and the Rest Break

3 Subclass and whether Defendants failed to compensate Plaintiff and the Rest Break Subclass

4 with one additional hour of wages at the regular rate of pay for each instance when a paid rest

5 break was not provided;

6           v.     Whether Defendants violated the California Labor Code by failing to

7 timely pay all wages due upon separation of employment between Defendants and Plaintiff and

8 the Waiting Time Penalties Subclass, whether such separation was voluntary or involuntary;

9           vi.     Whether Defendants violated the California Labor Code by failing to

10 provide Plaintiff and the Wage Statement Penalties Subclass with complete, accurate, itemized

11 wage statements;

12           vii.     Whether Defendants violated California Business & Professions Code §§

13 17200 *et seq.* due to the: failure to pay all wages owed, failure to provide mandated paid rest

14 breaks, failure to provide mandated meal periods, and failure to timely pay final wages; and

15           viii.     Whether Plaintiff and Represented Employees are entitled to equitable

16 relief pursuant to California Business & Professions Code §§ 17200 *et seq.*

17     34.    **Typicality:** Plaintiff's claims, as the Class Representative, are typical of the

18 claims of The Class. Plaintiff, like other members of The Class, was subjected to Defendants'

19 ongoing Labor Code and Wage Order violations including pertaining to the failure to pay all

20 wages owed, failure to provide mandated meal periods, failure to provide mandated paid rest

21 breaks, failure to timely pay wages upon separation of employment, and failure to provide

22 accurate itemized wage statements.

23     35.    **Adequacy of Representation.** Plaintiff, as the Class Representative, will fairly

24 and adequately represent and protect the interests of the Class. Plaintiff's interests are not in

25 conflict with those of the Class. Class Representative's counsel are competent and experienced in

26 litigating large employment class actions and other complex litigation matters, including cases

27 like this case.

28 ///

1     36.    **Superiority of Class Action**. Class certification is appropriate because a class

2  action is superior to other available means for the fair and efficient adjudication of this

3  controversy. Individual joinder of all Represented Employees is not practicable, and questions of

4  law and fact common to the Class predominate over any questions affecting only individual

5  members of the Class. Each Represented Employee has been damaged and is entitled to

6  recovery by reason of Defendants' illegal policies and practices set forth above. Class action

7  treatment will allow those similarly situated persons to litigate their claims in the manner that is

8  most efficient and economical for the parties and the judicial system.

9                         **FIRST CAUSE OF ACTION**

10                 **FAILURE TO PAY MINIMUM WAGES**

11          (Labor Code §§ 200, 1194, 1194.2, 1197; IWC Wage Order § 4)

12        *Plaintiff and the Represented Employees Against All Defendants*

13     37.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully

14  alleged herein.

15     38.    Plaintiff and the Represented Employees were not exempt from the requirement

16  to be paid at least the applicable California minimum wage throughout the statutory period for

17  each hour worked.

18     39.    Plaintiff and the Represented Employees were not provided proper minimum and

19  regular wages due to Defendants' failure to accurately record and compensate for all hours

20  worked. As a result of this policy and practice, Plaintiff and the Represented Employees were

21  required to perform off-the-clock work that Defendants either knew or should have known they

22  were performing.

23     40.    As one such example, Defendants required Plaintiff and the Represented

24  Employees to undergo mandatory temperature checks and screenings prior to clocking in for

25  payroll purposes. However, because this time was spent under Defendants' control but before

26  being allowed to clock in, it was uncompensated in violation of California law and led to

27  minimum and regular wage violations. See *Troester v. Starbucks Corporation* (2018) 5 Cal.5th

28  829 (California law "do[es] not allow employers to require employees to routinely work for

1 │ minutes off the clock without compensation"); See also *Frlekin v. Apple Inc.* (2020) 8 Cal.5th
2 │ 1038 (tasks are compensable when employee is under company's control and where the tasks
3 │ served the employer's interests).

4 │     41.    Additionally, Defendants frequently failed to pay proper minimum and regular
5 │ wages to Plaintiff and the Represented Employees due to the practice of automatically deducting
6 │ 30 minutes from each shift, regardless of whether a meal period occurred. To illustrate, Plaintiff
7 │ often worked 9.5 hours without a meal period, and no meal period was recorded in Defendants'
8 │ timekeeping system.  Yet, on these and similar occasions, Defendants only paid for 9 hours of
9 │ work despite that no meal period was taken or recorded, and without making any inquiry into
10 │ whether a compliant meal period occurred. This resulted in a failure to pay minimum/regular
11 │ wages (since Plaintiff was not paid at all for those 30 minutes). As a result, Defendants failed to
12 │ pay Plaintiff and the Represented Employees for all hours worked, including minimum and
13 │ regular wages.

14 │     42.    Consequently, Defendants violated California Labor Code laws and minimum
15 │ wage laws, *inter alia*, Labor Code §§ 200, 221, 222, 223, 1197, IWC Wage Order 9, § 4, and
16 │ Cal. Code Regs., tit. 8, section 11090, subds. 1 and 4(B).

17 │     43.    Plaintiff is informed and believes and thereon alleges that Defendants
18 │ intentionally, willfully, and improperly failed to pay wages to Plaintiff and the Represented
19 │ Employees for each hour worked in violation of Labor Code §§ 221-223, 1194 and 1197.

20 │     44.    Defendants' conduct was willful, as Defendants knew that Plaintiff and the
21 │ Represented Employees were entitled to be paid wages throughout the statutory period for each
22 │ hour worked, including proper minimum and regular wages, yet Defendants chose not to pay
23 │ them in accordance thereto.

24 │     45.    At all material times, Defendants DOES 1 through 20 were and/or are the
25 │ employer of Plaintiff and the Represented Employees or were persons acting on behalf of said
26 │ employer(s), within the meaning of California Labor Code § 558, who violated or caused to be
27 │ violated Labor Code § 204 and a provision or provisions of Part 2, Chapter 1 of the California
28 │ Labor Code regulating hours and days of work respectively.

1      46.    During employment of Plaintiff and the Represented Employees, Defendants

2  failed to pay them all wages to which they were entitled, thereby receiving an economic benefit.

3      47.    As a result of the Defendants' wrongful conduct, Plaintiff and the Represented

4  Employees have been damaged in amounts to be proven at trial.

5      48.    Plaintiff, on behalf of herself and the Represented Employees, seeks recovery of

6  all unpaid minimum wages, liquidated damages, penalties, interest, attorneys' fees and costs,

7  pursuant to Labor Code §§ 1194 and 1194.2, against Defendants in an amount to be proven at

8  trial.

9                    **SECOND CAUSE OF ACTION**

10              **FAILURE TO PAY OVERTIME WAGES**

11          (Labor Code §§ 204 and 510; IWC Wage Order § 3(A))

12       *Plaintiff and the Represented Employees Against All Defendants*

13      49.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully

14  alleged herein.

15      50.    Plaintiff and the Represented Employees were employees of Defendants who did

16  not receive proper protections and benefits of the laws governing payment of overtime wages.

17      51.    Labor Code § 204 requires that the employer timely pay all overtime wages to its

18  employees. Labor Code § 510(a) and the applicable IWC Wage Order § 3(A) provide that any

19  work performed in excess of eight (8) hours in one workday or in excess of forty (40) hours in

20  any one workweek shall be compensated at the rate of no less than one and one-half times the

21  regular rate of pay for an employee. Furthermore, any work performed in excess of twelve (12)

22  in one workday shall be compensated at twice the regular rate of pay for an employee.

23      52.    At all relevant times, Plaintiff and the Represented Employees were required by

24  Defendants to work hours in excess of 8 and/or 12 per day and/or 40 per week. However, due to

25  Defendants' failure to accurately record and compensate for all hours worked Plaintiff and the

26  Represented Employees did not receive proper overtime compensation.

27      53.    As one such example, Defendants required Plaintiff and the Represented

28  Employees to undergo mandatory temperature checks and screenings prior to clocking in for

1  payroll purposes. However, because this time was spent under Defendants' control but before
2  being allowed to clock in, it was uncompensated in violation of California law and led to
3  overtime violations. See *Troester v. Starbucks Corporation* (2018) 5 Cal.5th 829 (California law
4  "do[es] not allow employers to require employees to routinely work for minutes off the clock
5  without compensation"); See also *Frlekin v. Apple Inc.* (2020) 8 Cal.5th 1038 (tasks are
6  compensable when employee is under company's control and where the tasks served the
7  employer's interests).

8      54.    Additionally, Defendants frequently failed to pay proper overtime to Plaintiff and
9  the Represented Employees due to the practice of automatically deducting 30 minutes from each
10 shift, regardless of whether a meal period occurred. To illustrate, Plaintiff often worked 9.5 hours
11 without a meal period, and no meal period was recorded in Defendants' timekeeping system.
12 Yet, on these and similar occasions, Defendants only paid for 9 hours of work despite that no
13 meal period was taken or recorded, and without making any inquiry into whether a compliant
14 meal period occurred. This resulted in a failure to pay overtime wages (since those 30 minutes
15 were in excess of 8 hours and had to be paid at the proper overtime rate). Thus, Defendants
16 failed to pay proper overtime wages every time it applied its auto-deduct practice.

17     55.    Also, at all relevant times, Plaintiff and the Represented Employees were paid on
18 an hourly basis but were entitled to and did receive additional nondiscretionary compensation
19 (such as shift differentials). However, during workweeks where the Represented Employees
20 worked overtime hours and earned additional nondiscretionary compensation, Defendants failed
21 to include that compensation in the calculations for the regular rate of pay and instead paid
22 overtime at only 1.5 times the base rate of pay – violating the well-established rule that overtime
23 must always be paid at time and one-half the regular rate of pay.

24     56.    Defendants violate Labor Code §§ 204 and 510 and the applicable IWC Wage
25 Order § 3(A) every pay period with respect to Plaintiff and the Represented Employees because
26 Defendants required its employees to work hours in excess of 8 and/or 12 per day and/or 40 per
27 week without proper overtime compensation.

28 ///

1     57.    Plaintiff is informed and believes and thereon alleges that Defendants

2 intentionally, willfully, and improperly failed to pay proper overtime wages to Plaintiff and the

3 Represented Employees in violation of Labor Code §§ 204, 221-223, 510, 1194 and 1197.

4     58.    Defendants' conduct was willful, as Defendants knew that Plaintiff and the

5 Represented Employees were entitled to be paid proper overtime wages throughout the statutory

6 period, yet Defendants chose not to pay them in accordance thereto.

7     59.    At all material times, Defendants DOES 1 through 20 were and/or are the

8 employer of Plaintiff and the Represented Employees or were persons acting on behalf of said

9 employer(s), within the meaning of California Labor Code § 558, who violated or caused to be

10 violated Labor Code § 204 and a provision or provisions of Part 2, Chapter 1 of the California

11 Labor Code regulating hours and days of work respectively.

12    60.    During the employment of Plaintiff and the Represented Employees, Defendants

13 failed to pay them all wages to which they were entitled, thereby receiving an economic benefit.

14    61.    As a result of Defendants' wrongful conduct, Plaintiff and the Represented

15 Employees have been damaged in amounts to be proven at trial.

16    62.    Plaintiff, on behalf of herself and the Represented Employees, seeks recovery of

17 all unpaid overtime wages, penalties, interest, attorneys' fees, and costs of suit against

18 Defendants in an amount to be proven at trial.

19 **THIRD CAUSE OF ACTION**

20 **FAILURE TO PROVIDE MEAL PERIODS**

21 (Labor Code §§ 226.7 and 512; IWC Wage Order § 11, 12)

22 *Plaintiff and the Meal Break Subclass Against All Defendants*

23    63.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully

24 alleged herein.

25    64.    Plaintiff and the Meal Break Subclass are and/or were employees of Defendants

26 who did not receive proper protections and benefits of the laws governing mandatory meal

27 periods.

28 ///

1    65.    Labor Code § 226.7 requires employers, including Defendants, to provide
2  employees with meal periods as mandated by the Industrial Welfare Commission.

3    66.    Labor Code § 512(a), in part, provides that employers, including Defendants, may
4  not employ an employee for a work period of more than five hours per day without providing an
5  employee the opportunity to take an uninterrupted meal period of not less than 30 minutes,
6  except that if the total work period per day of the employee is no more than six hours, the meal
7  period may be waived by mutual consent of both the employer and the employee.  Employers
8  may not employ an employee for a work period more than 10 hours per day without providing
9  the employee with a second meal period of not less than 30 minutes.

10    67.    Pursuant to Labor Code § 226.7(b) and the applicable IWC Wage Order § 11(B),
11  Defendants shall pay an employee one additional hour of pay at the employee's regular rate of
12  pay for each meal period that is missed.

13    68.    At all relevant times herein, Plaintiff and the Meal Break Subclass were denied
14  the 30-minute meal periods to which they were entitled.  As a result of Defendants' policies and
15  practices, Plaintiff and the Represented Employees were subjected to meal period violations
16  when they were: (1) unable to take a meal period due to workload, (2) forced to take an on-duty
17  meal period while under the control of the Company, (3) forced to take a shortened meal period,
18  (4) forced to take a meal period after the 5th hour of work, and (5) not provided a mandated
19  second meal period for shifts in excess of 10 hours.

20    69.    Defendants violated Labor Code §§ 226.7, 512, and the applicable IWC Wage
21  Order every pay period because Plaintiff and the Meal Break Subclass were not provided with all
22  mandatory meal periods and Defendants failed to pay Plaintiff and the Meal Break Subclass one
23  additional hour of compensation at the regular rate of pay in lieu thereof.

24    70.    At all relevant times herein, Defendants failed to provide Plaintiff and the Meal
25  Break Subclass all mandated meal periods and failed to pay wage premiums in lieu of mandated
26  meal or rest periods, thereby receiving an economic benefit.

27    71.    On information and belief, Plaintiff and the Meal Break Subclass did not
28  voluntarily or willfully waive the mandated meal periods. Any expressed or implied waivers

1 | obtained from Plaintiff and the Meal Break Subclass were not willfully obtained, were not
2 | voluntarily agreed to, were a condition of employment, or were a part of a contract of an
3 | unlawful adhesion. Defendants did not permit or authorize Plaintiff and the Meal Break Subclass
4 | to take meal periods in accordance with California law.

5 | 72.   By their failure to provide Plaintiff and the Meal Break Subclass with meal
6 | periods as required by California law, and failing to pay one hour of additional wages in lieu of
7 | each meal period not provided, Defendants willfully violated Labor Code §§ 226.7 and 512, and
8 | IWC Wage Order § 11. Accordingly, Defendants are liable for one hour of additional wages at
9 | the employee's regular rate of compensation for each work day that a meal period was not
10 | lawfully provided in an amount to be proven at time of trial.

11 | 73.   Also, as a direct result of Defendants' violations of Labor Code §§ 226.7 and 512,
12 | and IWC Wage Order § 11, Defendants, and each of them, are liable to Plaintiff and the Meal
13 | Break Subclass for unpaid wage premiums, penalties, costs, and interest.

14 | **FOURTH CAUSE OF ACTION**

15 | **FAILURE TO PROVIDE REST BREAKS**

16 | (Labor Code §§ 226.7 and 512; IWC Wage Order § 12)

17 | *Plaintiff and the Rest Break Subclass Against All Defendants*

18 | 74.   Plaintiff incorporates the preceding paragraphs of the Complaint as if fully
19 | alleged herein.

20 | 75.   Plaintiff and the Rest Break Subclass are and/or were employees of Defendants
21 | who did not receive proper protections and benefits of the laws governing mandatory rest breaks.

22 | 76.   Labor Code § 226.7 requires employers, including Defendants, to provide rest
23 | breaks to its employees as mandated by Order of the Industrial Welfare Commission.

24 | 77.   The IWC Wage Order § 12 states, in part, that every employer shall authorize and
25 | permit all employees to take rest periods, which insofar as practicable shall be in the middle of
26 | each work period. Employees shall receive a 10-minute rest period every four hours or major
27 | fraction thereof that they are required to work. Authorized rest period time shall be counted, as
28 | hours worked, for which there shall be no deduction from wages.

1       78.    Pursuant to Labor Code § 226.7(b) and Section 12(B) of the applicable Wage

2  Order, Defendants shall pay Plaintiff and the Represented Employees one additional hour of pay

3  at her regular rate of compensation for each day that the rest period is not provided.

4       79.    At all relevant times, Defendants also failed to provide Plaintiff and the Rest

5  Break Subclass with 10 minutes of net rest break time for every 4 hours worked, or major

6  fraction thereof, as mandated by California law. Defendants did not schedule rest breaks, the

7  Rest Break Subclass was not permitted to leave the premises for a rest break, and the Rest Break

8  Subclass were often not authorized and/or permitted to take mandated rest breaks due to being

9  overwhelmed by their hectic workload. Furthermore, on occasions when Plaintiff and the Rest

10  Break Subclass worked lengthy shifts, Defendants failed to authorize and/or permit mandated

11  third or fourth rest breaks.

12      80.    Defendants violated Labor Code §§ 226.7, 512, and the applicable IWC Wage

13  Order every pay period because Plaintiff and the Rest Break Subclass were not provided with all

14  mandatory rest periods and Defendants failed to pay Plaintiff and the Represented Employees

15  one additional hour of compensation in lieu thereof.

16      81.    At all relevant times herein, Defendants failed to provide Plaintiff and the Rest

17  Break Subclass all mandated rest breaks and failed to pay wage premiums in lieu of mandated

18  rest periods, thereby receiving an economic benefit.

19      82.    By their failure to provide Plaintiff and the Rest Break Subclass with rest breaks

20  as required by California law, and failing to pay one hour of additional wages in lieu of each rest

21  break not provided, Defendants willfully violated Labor Code §§ 226.7 and 512, and IWC Wage

22  Order § 12. Accordingly, Defendants are liable for one hour of additional wages at the

23  employee's regular rate of compensation for each workday that a paid rest break was not

24  lawfully provided in an amount to be proven at time of trial.

25      83.    Also, as a direct result of Defendants' violations of Labor Code §§ 226.7 and 512,

26  and IWC Wage Order § 12, Defendants, and each of them, are liable to Plaintiff and the Rest

27  Break Subclass for unpaid wage premiums, penalties, costs, and interest.

28  ///

1                           **FIFTH CAUSE OF ACTION**

2                 **FAILURE TO TIMELY PAY FINAL WAGES**

3                       (Labor Code §§ 201 – 203)

4       *Plaintiff and the Waiting Time Penalties Subclass against All Defendants*

5       84.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully

6 alleged herein.

7       85.    Plaintiff and the Waiting Time Penalties Subclass are and/or were employees of

8 Defendants who did not receive proper protections and benefits of the laws governing the timing

9 and payment of wages.

10       86.    Labor Code § 201 requires that the employer immediately pay any wages, without

11 abatement or reduction, to any employee who is discharged.

12       87.    Labor Code § 202 requires that the employer pay all wages earned and unpaid,

13 without abatement or reduction, no later than 72 hours of receiving an employee's notice of

14 intent to quit or immediately at the time of quitting if at least a 72-hour notice was provided.

15       88.    Labor Code §§ 201-203 cause the unpaid wages of the employee to continue as a

16 penalty from the due date thereof at the same rate until paid or until an action therefore is

17 commenced, but the wages shall not continue for more than thirty (30) days.

18       89.    At all relevant times, Defendants employed a policy and practice whereby

19 Plaintiff and the Waiting Time Penalties Subclass were not paid all wages due and owing upon

20 separation of employment within the time required by Labor Code §§ 201 and 202.

21       90.    Also, at all relevant times, Defendants engaged in the practice of failing to pay all

22 wages due and owing to Plaintiff and the Waiting Time Penalties Subclass upon separation of

23 employment, including, but not limited to, minimum, regular, overtime, and vacation wages, as

24 well as meal and rest period premiums.

25       91.    Plaintiff alleges that, at all times material to this action, Defendants had a planned

26 pattern and practice of failing to timely pay Plaintiff and the Waiting Time Penalties Subclass all

27 wages due and owing upon separation of employment as required by Labor Code §§ 201 and

28 202. Consequently, pursuant to Labor Code § 203, Defendants owe Plaintiff and the Waiting

1  Time Penalties Subclass the above-described waiting time penalty, all in an amount to be shown
2  according to proof at trial and within the jurisdiction of this Court.

3  ### SIXTH CAUSE OF ACTION

4  ### FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS

5  (Labor Code § 226)

6  *Plaintiff and the Wage Statement Penalties Subclass against All Defendants*

7  92.  Plaintiff incorporates the preceding paragraphs of the Complaint as if fully
8  alleged herein.

9  93.  Plaintiff and the Wage Statement Penalties Subclass are and/or were employees of
10  Defendants who did not receive proper protections and benefits of the laws governing the
11  provision of accurate itemized wage statements.

12  94.  Labor Code § 226(a) requires an employer to provide its employees with itemized
13  wage statements accurately stating gross wages earned, all deductions, net wages earned, the
14  inclusive dates of the pay period, the employee's name and the last four digits of his or her
15  Social Security number (or employee identification number), the name and address of the legal
16  entity that is the employer, and all applicable hourly rates in effect during the pay period and the
17  corresponding number of hours worked at each hourly rate by the employee.

18  95.  Defendants violate Labor Code § 226(a) every pay period with respect to Plaintiff
19  and the Wage Statement Penalties Subclass due to violations including: failure to accurately state
20  total hours worked (the wage statements failed to accurately reflect total compensable hours due
21  to the illegal temperature check and auto-deduct policies); failure to accurately state gross wages
22  earned; failure to accurately state all deductions; failure to accurately state net wages earned;
23  failure to state the applicable hourly rates (including the accurate overtime rate of pay); and
24  failure to accurately state the corresponding number of hours worked at each hourly rate.

25  96.  Therefore, Defendants violate Labor Code § 226(a) every pay period with respect
26  to Plaintiff and the Wage Statement Penalties Subclass because Defendants failed to provide a
27  wage statement to Plaintiff and the Wage Statement Penalties Subclass that complied with the
28  requirements of Labor Code § 226(a).

1    97.    Defendants' failure to provide the required writing deprived Plaintiff and the
2  Wage Statement Penalties Subclass of the ability to know, understand, and question the
3  calculation and rate of pay and hours used to calculate the wages paid by Defendants. Therefore,
4  Plaintiff and the Wage Statement Penalties Subclass had no way to dispute the resulting
5  miscalculation of wages, all of which resulted in an unjustified economic enrichment to said
6  Defendants. As a direct result, Plaintiff and the Wage Statement Penalties Subclass have suffered
7  and continue to suffer, substantial losses related to the use and enjoyment of such wages, lost
8  interest on such wages and expenses and attorney's fees in seeking to compel Defendants to fully
9  perform its obligation under state law, all to their respective damages in amounts according to
10  proof at trial.

11    98.    As a result of Defendants' knowing and intentional failure to comply with Labor
12  Code § 226(a), Plaintiff and the Wage Statement Penalties Subclass have suffered an injury in
13  that each was prevented from knowing, understanding and disputing the wage payments paid to
14  them. Furthermore, Plaintiff and the Wage Statement Penalties Subclass have each suffered an
15  injury in that the failure to show all wages earned on the itemized wage statements resulted in
16  Plaintiff and the Represented Employees being denied all necessary deductions, payments, and
17  withholdings owed by the employer, including, but not limited to, the failure to make all
18  necessary contributions for unemployment benefits, social security benefits, proper payment of
19  taxes and withholdings, and other mandated state and federal benefits.

20    99.    Plaintiff has also been injured as a result of having to bring this action to attempt
21  to obtain correct wage information following Defendants' refusal to comply with many of the
22  mandates of California's Labor Code and related laws and regulations.

23    100.    Labor Code § 226(e) requires Defendants to pay the greater of all actual damages
24  or fifty dollars ($50.00) per employee for the initial pay period in which a violation occurred, and
25  one hundred dollars ($100.00) per employee for each violation in subsequent pay periods, plus
26  attorney's fees and costs, to Plaintiff and the Wage Statement Penalties Subclass who were
27  injured by Defendants' failure to comply with Labor Code § 226(a). The exact amount of the
28  applicable penalty is all in an amount to be shown according to proof at trial.

1                              **SEVENTH CAUSE OF ACTION**

2                   **UNFAIR AND UNLAWFUL COMPETITION**

3                (Business and Professions Code § 17200 *et seq.*)

4         *Plaintiff and the Represented Employees against All Defendants*

5        101.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully

6 alleged herein.

7        102.    California Business & Professions Code § 17200, *et seq.*, prohibits acts of unfair

8 competition, which includes any "unlawful, unfair or fraudulent business act or practice." The

9 Represented Employees, including Plaintiff, have suffered and continue to suffer injuries in fact,

10 due to the unfair and unlawful business practices of Defendants as alleged herein.

11       103.    Defendants, and each of them, are "persons" as defined under Business &

12 Professions Code § 17021.

13       104.    As alleged herein, Defendants engaged in conduct that violated California's wage

14 and hour laws, including failure to pay minimum, regular, and overtime wages, failure to provide

15 mandated meal periods and rest breaks, and failure to timely pay wages upon separation of

16 employment, all to decrease their costs and increase their profits.

17       105.    At all times relevant herein, Defendants did not pay Plaintiff and the Represented

18 Employees wages and monies and other financial obligations to which they were entitled.

19       106.    As a result of Defendants' failure to comply with the Labor Code and IWC

20 Orders, Represented Employees, including Plaintiff, suffered a loss of wages and monies, all in

21 an amount to be shown according to proof at trial. Defendants' ongoing violations of the

22 foregoing statutes and laws constitute a violation of Bus. & Prof. Code § 17200, *et seq*.

23       107.    Defendants' violations of the California Labor Code and IWC Wage Orders and

24 its scheme to lower its payroll costs as alleged herein, constitute unlawful and unfair business

25 practices because it was done in a systematic manner over a period of time to the detriment of the

26 Plaintiff and all others similarly-situated.

27       108.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

28 unlawful, and harmful to Plaintiff, other Represented Employees, and to the general public.

1   Plaintiff seek to enforce important rights affecting the public interest within the meaning of Code

2   of Civil Procedure § 1021.5.

3         109.    A violation of California Business & Professions Code § 17200, et seq. may be

4   predicated on the violation of any state or federal law. All of the acts described herein as

5   violations of, among other things, the California Labor Code and IWC Wage Orders, are

6   unlawful and in violation of public policy, and in addition are immoral, unethical, oppressive,

7   fraudulent and unscrupulous, and thereby constitute unfair, unlawful and/or fraudulent business

8   practices in violation of California Business and Professions Code §§ 17200, et seq.

9         110.    Plaintiff, individually, and on behalf of the Represented Employees, has no plain,

10   speedy, and/or adequate remedy at law to redress the injuries which they have suffered as a

11   consequence of Defendants' unfair, unlawful and/or fraudulent business practices. As a result of

12   the unfair, unlawful and/or fraudulent business practices described above, Plaintiff, individually,

13   and on behalf of the Represented Employees, has suffered and will continue to suffer irreparable

14   harm unless Defendants, and each of them, are restrained from continuing to engage in said

15   unfair, unlawful and/or fraudulent business practices.

16         111.    Plaintiff, individually, and on behalf of the Represented Employees, is entitled to,

17   and does, seek such relief as may be necessary to disgorge the profits which Defendants have

18   acquired, or of which Plaintiff and Represented Employees have been deprived, by means of the

19   above-described unfair, unlawful and/or fraudulent business practices. Plaintiff and the

20   Represented Employees are not obligated to establish individual knowledge of the unfair

21   practices of Defendants in order to recover restitution.

22         112.    Plaintiff, individually, and on behalf of the Represented Employees, is further

23   entitled to and do seek a declaration that the above described business practices are unfair,

24   unlawful and/or fraudulent, and injunctive relief restraining Defendants, and each of them, from

25   engaging in any of the above-described unfair, unlawful and/or fraudulent business practices in

26   the future.

27         113.    Pursuant to Business & Professions Code §§ 17200, et seq., Plaintiff and

28   Represented Employees are entitled to restitution of the wages withheld and retained by

1 Defendants during a period that commences four years prior to the filing of this complaint; a
2 permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and
3 Represented Employees; an award of attorneys' fees pursuant to California Code of Civil
4 Procedure § 1021.5 and other applicable laws; and an award of costs.

5 **VI.     PRAYER FOR RELIEF**

6         WHEREFORE, Plaintiff, on behalf of herself, on a representative basis, and all others
7 similarly situated, prays for judgment and relief against Defendants, jointly and severally, as
8 follows:

9       1.     That the First through Seventh Causes of Action be certified as a class action;

10      2.     That Plaintiff be appointed as Class Representative;

11      3.     That counsel for Plaintiff be appointed Class Counsel;

12      4.     For all applicable statutory penalties recoverable under the First through Seventh
13 Causes of Action to the extent permitted by law, including those pursuant to Labor Code and
14 Orders of the Industrial Welfare Commission;

15      5.     For reasonable attorneys' fees, costs of suit, and interest to the extent permitted by
16 law, including those pursuant to the Labor Code;

17      6.     For injunctive relief and/or restitution as provided by the Labor Code and
18 Business and Professions Code § 17200, *et seq.*;

19      7.     For a declaratory judgment that Defendants have violated Labor Code §§ 200,
20 201, 202, 203, 204, 208, 210, 218.6, 221, 226, 226.3, 226.7, 510, 512, 558, 1194, 1197, 1198,
21 and 1199, among other sections inadvertently omitted;

22      8.     For an award of damages in the amount of unpaid compensation including, but
23 not limited to, unpaid wages, benefits, and penalties according to proof, including interest
24 thereon;

25      9.     For pre- and post-judgment interest; and

26      10.    For such other relief as the Court deems just and proper.

27 / / /

28 / / /

1

## DEMAND FOR JURY TRIAL

2

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, hereby

3

demands a jury trial as to the First through Seventh Causes of Action pled herein.

4

5

Dated: January 21, 2022                           LAUBY, MANKIN & LAUBY LLP

6

7                                           BY:

8                                                Brian J. Mankin, Esq.
                                                 Peter J. Carlson, Esq.
9                                                Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT D

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Brian J. Mankin, Esq. [CSB: 216228]; Peter J. Carlson, Esq. [CSB: 295611]<br>LAUBY, MANKIN & LAUBY LLP<br>4590 Allstate Drive<br>Riverside, CA 92501 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: 951-320-1444        FAX NO. *(Optional):* 951-320-1445 | |
| E-MAIL ADDRESS: brian@lmlfirm.com; peter@lmlfirm.com | **ELECTRONICALLY** |
| ATTORNEY FOR *(Name):* Plaintiff JAMIE JOHNSON | **FILED** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civil Center Courthouse

**Superior Court of California,
County of San Francisco**

**01/24/2022
Clerk of the Court
BY: KAREN VALDES**
Deputy Clerk

CASE NAME:
JOHNSON vs. SAN FRANCISCO HEALTH CARE AND REHAB INC.

| **CIVIL CASE COVER SHEET**<br>[x] **Unlimited**    [ ] **Limited**<br>(Amount    (Amount<br>demanded    demanded is<br>exceeds $25,000)    $25,000 or less) | **Complex Case Designation**<br>[ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>CGC-22-597785 |
|---|---|---|
| | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[x] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation
(Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* SEVEN
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 1/24/2022
Peter J. Carlson, Esq.

(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
 Asbestos Property Damage
 Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
 Medical Malpractice– Physicians & Surgeons
 Other Professional Health Care Malpractice
Other PI/PD/WD (23)
 Premises Liability (e.g., slip and fall)
 Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
 Intentional Infliction of Emotional Distress
 Negligent Infliction of Emotional Distress
 Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
 Legal Malpractice
 Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
 Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
 Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
 Negligent Breach of Contract/ Warranty
 Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
 Collection Case–Seller Plaintiff
 Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
 Auto Subrogation
 Other Coverage
Other Contract (37)
 Contractual Fraud
 Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
 Writ of Possession of Real Property
 Mortgage Foreclosure
 Quiet Title
 Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
 Writ–Administrative Mandamus
 Writ–Mandamus on Limited Court Case Matter
 Writ–Other Limited Court Case Review
Other Judicial Review (39)
 Review of Health Officer Order
 Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
 Abstract of Judgment (Out of County)
 Confession of Judgment *(non-domestic relations)*
 Sister State Judgment
 Administrative Agency Award *(not unpaid taxes)*
 Petition/Certification of Entry of Judgment on Unpaid Taxes
 Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
 Declaratory Relief Only
 Injunctive Relief Only *(non-harassment)*
 Mechanics Lien
 Other Commercial Complaint Case *(non-tort/non-complex)*
 Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
 Civil Harassment
 Workplace Violence
 Elder/Dependent Adult Abuse
 Election Contest
 Petition for Name Change
 Petition for Relief From Late Claim
 Other Civil Petition

**CIVIL CASE COVER SHEET**

# EXHIBIT E



**Superior Court of California, County of San Francisco**

**Alternative Dispute Resolution**
**Program Information Package**



> The plaintiff must serve a copy of the ADR information package
> on each defendant along with the complaint. (CRC 3.221(c))

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

## WHY CHOOSE ADR?

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet) at the clerk's office located at 400 McAllister Street, Room 103;
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-982-1600 or www.sfbar.org/adr for more information.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
415-551-3876

*Or, visit the court ADR website at www.sfsuperiorcourt.org*

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

## 1) EARLY SETTLEMENT CONFERENCES

The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** This program, provided in conjunction with the court, pairs parties with a two-member volunteer attorney panel. The panels are comprised of one plaintiff and one defense attorney, each with at least 10 years of trial experience. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist.

**Operation:** The settlement conference typically occurs 2 to 3 months prior to the trial date. BASF informs the participants of the conference date well in advance and provides the names of the panelists and location of the conference approximately 2 weeks prior to the conference. Panelists provide at **no cost** up to 2 hours of their time at each conference, and many panelists provide additional time at no cost if a settlement is imminent. A conference typically begins with a brief meeting with all parties and their attorneys during which each side presents an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of their cases, utilizing private meetings as appropriate. If a case does not settle during the first two hours, parties have the option to hire the panelists to continue the conference.

**Cost:** BASF charges an administrative fee of $250 per party. For information on fees for cases involving multiple parties, please contact BASF. Parties who meet certain eligibility requirements may request a waiver of the fee. For more information, please contact BASF's ESP Coordinator at 415-782-9000 ext. 8717 or visit www.sfbar.org/esp.

**(B) COURT SETTLEMENT CONFERENCE:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement, before incurring the expense of going to court, that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law. A mediator strives to bring the parties to a mutually beneficial settlement of the dispute.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** A mediator provides at **no cost** one hour of preparation time and two hours of mediation time. After those three hours, if the case is not resolved, parties have the option to continue the process and pay the mediator at his or her regular hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties may select a specific mediator or BASF will help the parties make a selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process.

**Cost:** BASF charges an administrative fee of $250 per party. For information on fees for cases involving multiple parties, please contact BASF. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Parties who meet certain eligibility requirements may request a waiver of the fee. For more information, please contact BASF's Mediation Coordinator at 415-782-9000 ext. 8787 or visit www.sfbar.org/mediation.

**(B) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private mediation. Parties may elect any private mediator or mediation organization of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will very depending on the mediator selected.

## 3) ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION:** When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation:** Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the court's Arbitration Panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 30 days after the arbitrator's award has been filed.

Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

**Cost:** There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

# EXHIBIT F

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Lauby Mankin & Lauby, LLP<br>Brian J. Mankin, Esq. SBN: 216228<br>4590 Allstate Drive<br>Riverside, CA 92501<br>  TELEPHONE NO: 951-320-1444          FAX NO *(Optional)*:<br><br>ATTORNEY FOR *(Name)*:  Plaintiff | **ELECTRONICALLY**<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br><br>**02/16/2022**<br>**Clerk of the Court**<br>**BY: YOLANDA TABO-RAMIREZ**<br>**Deputy Clerk** |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Francisco |
|---|
|   STREET ADDRESS:  400 McAllister Street |
|   MAILING ADDRESS: |
| CITY AND ZIP CODE:  San Francisco, 94102 |
|   BRANCH NAME:  San Francisco County Superior Court - Civic Center Courthouse |

| PLAINTIFF / PETITIONER:  Jamie Johnson, individually, on a representative basis, and on behalf of all others similarly situated | CASE NUMBER:<br>CGC-22-597785 |
|---|---|
| DEFENDANT / RESPONDENT:  San Francisco Health Care and Rehab Inc, a California Corporation, et al. | |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>6677419 |
|---|---|

*(Separate proof of service is required for each party served.)*

1.   At the time of service I was at least 18 years of age and not a party to this action.
2.   I served copies of:
   a.   ☒  Summons
   b.   ☒  Complaint
   c.   ☒  Alternative Dispute Resolution (ADR) Package
   d.   ☒  Civil Case Cover Sheet *(served in complex cases only)*
   e.   ☐  Cross-Complaint
   f.   ☐  Other *(specify documents)*:
3.   a.   Party served *(specify name of party as shown on documents served)*:
         San Francisco Health Care and Rehab Inc, a California Corporation
      b.   ☒  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
         Svetlana Stukov - Agent for Service
4.   Address where the party was served:
      1477 Grove St., San Francisco, CA 94117
5.   I served the party *(check proper box)*
      a.   ☐  by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*         (2) at *(time):*
      b.   ☒  by substituted service. On *(date):* Mon, Feb 14 2022       at *(time):*  12:05 PM         I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:
         Peter Wong, Security Supervisor
         (1)   ☒   (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
         (2)   ☐   (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
         (3)   ☐   (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
         (4)   ☐   I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*
            from *(city):*                                    or ☒ a declaration of mailing is attached.
         (5)   ☒   I attach a declaration of diligence stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER:  Jamie Johnson, individually, on a representative basis, and on behalf of all others similarly situated | CASE NUMBER: |
|---|---|
| DEFENDANT / RESPONDENT:  San Francisco Health Care and Rehab Inc, a California Corporation, et al. | CGC-22-597785 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
   (1) on *(date)*:                                   (2)   from *(city)*:
   (3) ☐ with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)
   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)
   d. ☐ **by other means** *(specify means of service and authorizing code section):*

      ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify):*
   c. ☐ as occupant.
   d. ☒ On behalf of *(specify):*   San Francisco Health Care and Rehab Inc, a California Corporation
      under the following Code of Civil Procedure section:
      ☒ 416.10 (corporation)                        ☐ 415.95 (business organization, form unknown)
      ☐ 416.20 (defunct corporation)                ☐ 416.60 (minor)
      ☐ 416.30 (joint stock company/association)    ☐ 416.70 (ward or conservatee)
      ☐ 416.40 (association or partnership)          ☐ 416.90 (authorized person)
      ☐ 416.50 (public entity)                       ☐ 415.46 (occupant)
      ☐ other:

7. **Person who served papers**
   a. Name:   Lindon Lilly
   b. Address:   4651 Brookhollow Circle, Ste. C, Riverside, CA 92509
   c. Telephone number:   951-353-8281
   d. The fee for service was:   $193.11
   e. I am:
      (1) ☐ not a registered California process server.
      (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
      (3) ☒ a registered California process server:
         (i) ☐ owner ☐ employee ☒ independent contractor
         (ii) Registration No:   PS-537
         (iii) County:   San Mateo

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   or
9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:  02/15/2022

Lindon Lilly
_____
(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

_____
(SIGNATURE)

MC-031

| PLAINTIFF / PETITIONER: Jamie Johnson, individually, on a representative basis, and on behalf of all others similarly situated | CASE NUMBER: CGC-22-597785 |
|---|---|
| DEFENDANT / RESPONDENT: San Francisco Health Care and Rehab Inc, a California Corporation, et al. | |

## DECLARATION OF DILIGENCE

(This form must be attached to another form or court paper before it can be filed in court.)

1) Unsuccessful Attempt: Feb 14, 2022, 12:04 pm at Company: 1477 Grove St., San Francisco, CA 94117
I spoke to Peter Wong, Security Supervisor, who refused to let me enter the building, so I announced service and drop served the documents on the desk in his presence.

2) Successful Attempt: Feb 14, 2022, 12:05 pm at Company: 1477 Grove St., San Francisco, CA 94117
The documents were drop served on Peter Wong, Security Supervisor.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   02/15/2022

Lindon Lilly
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

☐ Attorney for       ☐ Plaintiff   ☐ Petitioner   ☐ Defendant
☐ Respondent       ☐ Other *(Specify)*:

MC-031

| PLAINTIFF / PETITIONER: Jamie Johnson, individually, on a representative basis, and on behalf of all others similarly situated | CASE NUMBER: CGC-22-597785 |
| DEFENDANT / RESPONDENT: San Francisco Health Care and Rehab Inc, a California Corporation, et al. | |

## DECLARATION OF MAILING
(This form must be attached to another form or court paper before it can be filed in court.)

1. I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occurred.
2. I served copies of the Summons; Complaint; Civil Case Cover Sheet; Alternative Dispute Resolution (ADR) Package
3. By placing a true copy of each document in United States mail, in a sealed envelope by First Class mail with postage prepaid as follows:
   a.  Date of Mailing:      Tue, Feb 15 2022
   b.  Place of Mailing:     Riverside, CA 92509
   c.  Addressed as Follows: San Francisco Health Care and Rehab Inc, a California Corporation
                             c/o Svetlana Stukov - Agent for Service
                             1477 Grove St.
                             San Francisco, CA 94117
4. I am readily familiar with the business practice for collection and processing of correspondence as deposited with the U.S. Postal Service
5. **Person who mail served papers**
   a.  Name:             Kevin Boucher
   b.  Address:          4651 Brookhollow Circle, Ste. C, Riverside, CA 92509
   c.  Telephone number: 951-353-8281
   d.  I am:
       (1) [  ] not a registered California process server.
       (2) [X] exempt from registration under Business and Professions Code section 22350(b).
       (3) [  ] a registered California process server:
           (i)  [  ] owner  [  ] employee  [  ] independent contractor
           (ii)  Registration No:
           (iii) County:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  02/15/2022

Kevin Boucher
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

[  ] Attorney for   [  ] Plaintiff   [  ] Petitioner   [  ] Defendant
[  ] Respondent    [  ] Other (Specify):

# EXHIBIT G

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

| | |
|---|---|
| **DATE:** | **JUN 29, 2022** |
| **TIME:** | **10:30 am** |
| **PLACE:** | **Department 610**<br>**400 McAllister Street**<br>**San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order   **without an appearance**   at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.   **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION,  AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

Plaintiff  **must**  serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint.  (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400  McAllister Street, Room 103-A**
**San Francisco, CA  94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**