UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>SAN FRANCISCO HEALTH CARE AND REHAB INC.,<br><br>    Defendant. | Case No. 22-cv-01982-JSC<br><br>**ORDER RE: MOTIONS TO DISMISS AND REMAND**<br><br>Re: Dkt. Nos. 15, 18 |

Jamie Johnson ("Plaintiff") sued her former employer, San Francisco Health Care and Rehab Inc. ("Defendant"), in San Francisco Superior Court. (*See* Dkt. No. 1 at 51.)[1] Defendant removed to federal court. Now pending are Plaintiff's motion to remand and Defendant's motion to dismiss. (Dkt. Nos. 15, 18.) After considering the parties' briefing and oral argument, the Court DENIES Plaintiff's motion to remand, GRANTS in part and DENIES in part Defendant's motion to dismiss, and declines supplemental jurisdiction over the remaining claims.

## BACKGROUND

Plaintiff worked for Defendant for six months in 2021. According to the complaint, Defendant frequently failed to pay minimum wages, pay overtime wages, provide meal breaks and rest periods, timely pay final wages, and provide accurate itemized wage statements. (Dkt. No. 1 at 51.) Defendant and the Service Employees International Union ("SEIU") have a collective bargaining agreement (the "SEIU CBA").[2] Plaintiff filed this putative class action, alleging California Labor Code violations and a violation of California's unfair competition law. (*Id.*)

---

[1] Record citations are to material in the Electronic Case File ("ECF") in Case No. 22-cv-01982, unless otherwise noted; pinpoint citations are to the ECF-generated page numbers.
[2] The Court takes judicial notice of the SEIU CBA. *See Jones v. AT&T*, 2008 WL 902292, *2 (N.D. Cal. Mar. 31, 2008)

**PROCEDURAL HISTORY**

Plaintiff sued Defendant in San Francisco Superior Court. (*Id.*) Defendant filed a notice of removal ("NOR") and removed the case to federal court. (*Id.* at 1.) Plaintiff then amended the complaint in the state court. (Dkt. No. 10 at 108.) Defendant filed an amended NOR in this Court. (Dkt. No. 10 at 1.) Plaintiff filed a motion to remand the case back to the state court. (Dkt. No. 15.) Defendant opposed remand and filed a motion to dismiss. (Dkt. Nos. 27, 18.)

**DISCUSSION**

**I.   Motion to Remand**

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also* 28 U.S.C. § 1441(a). A defendant seeking removal to federal court "bears the burden of establishing that removal is proper," and the "removal statute is strictly construed against removal jurisdiction." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.")

**A.   The LMRA Preemption Standard**

Defendant argues that the Labor Management Relations Act ("LMRA") provides federal jurisdiction in this case because the LMRA preempts Plaintiff's state law claims. LMRA § 301 provides federal jurisdiction over "suits for violation of contracts between an employee and a labor organization." 29 U.S.C. § 185. When the LMRA applies, it completely preempts state law claims. *Watkins v. Woodridge Prods., Inc*, 2020 WL 949513, at *2 (C.D. Cal. Feb. 27, 2020).

The LMRA preemption inquiry has two parts. First, a court determines "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007). Second, if the right underlying the state claim exists independently of the CBA, the claim is preempted if the state law right is

2

"substantially dependent on analysis of a collective bargaining agreement." *Id.* (cleaned up).

### B.     Claims at Issue

Defendant argues the LMRA preempts Plaintiff's state law claims because the SEIU CBA preempts Plaintiff's various claims for relief. (Dkt. No. 1 ¶ 1.) Plaintiff objects that Defendant may only establish federal jurisdiction based on the claims specifically referenced in Defendant's original NOR: (1) the overtime claim; (2) the meal break claims; and (3) the rest break claims. (*Id.*) To support this position, Plaintiff cites *ARCO Environmental Remediation, L.L.C. v. Department of Health & Environmental Quality of Montana*, 213 F.3d 1108 (9th Cir. 2000). (Dkt. No. 36 at 6.) In *ARCO*, the Ninth Circuit held that the NOR cannot be amended to add a new basis of jurisdiction after a 30-day period expires. *Id.* at 1117 (citing *O'Halloran v. University of Washington,* 856 F.2d 1375, 1381 (9th Cir. 1988)). The Court requested supplemental briefing addressing whether, under *ARCO*, Defendant waived removal arguments as to claims not specified in the initial NOR. (Dkt. No. 42.)

*ARCO* does not apply here. In *ARCO*, the defendant initially removed the case based on 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 9613(b) (federal court exclusive jurisdiction of CERCLA claims). *ARCO*, 213 F.3d at 1117. Later, the defendant attempted to assert different bases for federal jurisdiction—the supplemental jurisdiction statute and the All Writs Act. *Id.* The Ninth Circuit found that such an amendment, stating a new jurisdictional "basis," was impermissible after the 30-day deadline expired. *Id.* The *ARCO* court used the word "basis" to refer to a defendant's overarching ground for removal—such as federal question jurisdiction or diversity jurisdiction. *Id.* Here, Defendant has been consistent that LMRA preemption—federal question jurisdiction is—the basis for removal. (Dkt. No. 1 ¶¶ 1, 17; Dkt. No. 16 ¶ 1.) Thus, while the amended NOR and subsequent briefing better described Defendant's LMRA preemption theory, Defendant did not add any new "bases" for federal jurisdiction. *Id.*

Because Defendant removed this action on the basis of federal question jurisdiction under 28 U.S.C. § 1331 due to LMRA § 301 preemption, (Dkt. No. 1 ¶ 17), the Court considers whether the LMRA § 301 preempts any of the claims in Plaintiff's initial complaint. *See Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979) ("In determining the existence of removal

3

jurisdiction based upon a federal question, [courts] must look to the complaint as of the time the removal petition was filed.")  Specifically, Defendant argues that LMRA § 301 preempts (1) Plaintiff's claim for overtime under Labor Code § 510; (2) Plaintiff's claims for meal and rest breaks; (3) Plaintiff's claim for minimum wage payments; and (4) Plaintiff's claims for timely final payments, itemized wage statements, and timely bimonthly pay.  The Court addresses argument each in turn.

### C. California Labor Code § 510

Defendant argues that Plaintiff's claim for unpaid overtime wages arises from the SEIU CBA because California Labor Code § 514 bars Plaintiff's overtime claim under Labor Code § 510.  (Dkt. No. 27 at 16.)  Alternatively, Defendant contends that Plaintiff's state law claim requires interpretation of the SEIU CBA.  Defendant has not met its burden on either point.

#### 1. Does the claim exist solely as a result of the SEIU CBA?

Plaintiff alleges that Defendant failed to pay overtime wages in violation of California Labor Code § 510.  (Dkt. No. 1-1 at 62.)  California Labor Code § 510(a) provides a default rule for overtime pay.  *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1153 (9th Cir. 2019).  It does not, however, apply to employees "working pursuant to . . . [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514."  Cal. Lab. Code § 510(a)(2).  Section 514 provides:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514.  "By its terms, therefore, the default definition of overtime and overtime rates in section 510 does not apply to an employee who is subject to a qualifying CBA."  *Curtis*, 913 F.3d at 1153–54.  Thus, if a plaintiff's CBA meets the requirements of § 514, the plaintiff's "right to overtime 'exists solely as a result of the CBA,' and therefore is preempted under [LMRA] § 301."  *Id.* at 1154.

4

### a. Section 514 Applies Absent an Alternative Workweek

As a preliminary matter, § 514 applies to employees who are subject to a qualifying CBA but are not "working pursuant to . . . [a]n alternative workweek schedule." Cal. Lab. Code § 510(a)(2). Plaintiff relies on *Flournoy v. Watts Healthcare Corporation* for the proposition that "the exception under § 510(a) applies only to CBAs that both satisfy § 514 *and adopt an alternative workweek schedule.*" 2020 WL 5960686, at *4 (C.D. Cal. Oct. 6, 2020) (emphasis in original). The Court disagrees. Section 514's exemption operates independently from the exemption in § 510(a)(2). *See Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 109–13 (2014) (finding for defendants on § 514 and § 510(a)(2) grounds "alternatively"). The plain text of § 514 and its legislative history supports this interpretation. *See Cathcart v. Sara Lee Corp.*, 2011 WL 5981849, at *7 (N.D. Cal. Nov. 30, 2011) (interpreting text and legislative history to find that "§ 510(a)(2) does not limit the applicability of the exemption set forth in § 514.") Thus, if Plaintiff is subject to a qualifying CBA as defined in § 514, the overtime requirements in § 510(a) do not apply even if Plaintiff was not working an alternative workweek schedule.

### b. The CBA Does not Satisfy Section 514

Under § 514, a qualifying CBA: (1) "expressly provides for the wages, hours of work, and working conditions of the employees"; (2) "provides premium wage rates for all overtime hours worked"; and (3) provides "a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Labor Code § 514.

First, Defendant argues that "Plaintiff makes no allegation, nor can she, that she was not in fact always paid at least 130% of the minimum wage." (Dkt. No. 27 at 18.) But Plaintiff's wages do not dictate whether the § 514 exemption applies. Rather, a CBA "must satisfy Section 514's substantive requirements with respect to all covered employees in order to render Section 510 inapplicable to any particular employee." *Baltazar v. Ace Parking Mgmt., Inc.*, 2022 WL 1589297, at *3 (S.D. Cal. Mar. 14, 2022) (collecting cases).

Section 514's text and legislative history dictate that a CBA must satisfy § 514 as to all employees to render § 510 inapplicable to a particular employee. Textually, the Court agrees with the statutory interpretation of § 514 provided in *Huffman v. Pacific Gateway Concessions LLC*,

5

2019 WL 2563133, at *5–6 (N.D. Cal. June 21, 2019). There, the court analyzed § 514 as follows:

> First, it is clear that Section 514 exempts application of Section 510 to "an employee covered by a valid collective bargaining agreement" if certain conditions are met. Here, defendant is seeking to exempt application of Section 510 to plaintiff—a covered employee.
>
> Second, the CBA must "expressly provide[ ] for the wages, hours of work, and working conditions of the employees[.]" Cal. Lab. Code § 514. Although "the employees" is not explicitly defined, it stands in stark contradistinction to the earlier reference to "an employee." Rather than referring to "such employee" or "that employee," the statute instead refers to plural "employees" and requires that the CBA expressly provide for the wages, hours, and working conditions of all employees covered by the CBA.
>
> Third, the agreement must provide a premium rate for overtime and regular wages exceeding the state's minimum wage "for those employees." The plural term "those employees" refers back the statute's earlier use of "the employees" which, as discussed above, means all employees covered by the CBA.
>
> It is apparent from the statute's plain language that a CBA must satisfy Section 514's substantive requirements with respect to all covered employees in order to render Section 510 inapplicable to any particular employee. Put another way, Section 514 concerns the merits of the agreement itself, not its treatment of any individual employee.

*Id*. The legislative history also supports this interpretation. *See Sarmiento v. Sealy, Inc.*, 2019 WL 3059932, at *8 (N.D. Cal. July 12, 2019) (reviewing changes to the statutory scheme and finding that the legislature chose the plural phrase "the employees" rather than the singular phrase "such employee"). Thus, the SEIU CBA must satisfy § 514's requirements as to all employees to render § 510 inapplicable to any particular employee. *See Huffman*, 2019 WL 2563133, at *5–6.

Defendant has not established that the SEIU CBA meets the criteria established in § 514 as to all employees. Specifically, the SEIU CBA does not provide a "regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. The SEIU CBA sets out "Minimum Wage Rates" in Appendix A. (Dkt. No. 1-1 at 39.) The lowest pay rate specified in the SEIU CBA, effective as of October 2018, was $15.00 per hour. (*Id*.) The parties agree that, as of 2018, $15.00 per hour was 30 percent more than the state minimum wage. (Dkt. No. 15 at 10; Dkt. No. 27 at 17 n.24.) When Plaintiff worked for

6

1   Defendant in 2021, however, the California minimum wage was $14.00 per hour.  Cal. Lab. Code
2   § 1182.12.  Thus, to obtain the benefit of the exemption in § 514, the SEIU CBA would have to
3   provide a minimum hourly rate of $18.20 per hour ($14.00 multiplied by 1.3).  On its face, the
4   SEIU CBA does not do so.
5    Defendant contends that a series of "savings clauses" keep the SEIU CBA within the
6   requirements of § 514 "despite an issue with any one clause." (Dkt. No. 27 at 18 & n.24.)
7   Specifically, in Article 17.2, the SEIU CBA states that "[i]n the event California or Federal Law is
8   modified or amended during the term of this Agreement so that the law requires payment of wages
9   higher than specified herein, the Employer shall comply therewith." (Dkt. No. 1-1 at 22.)
10  Likewise, Defendant points to Article 31, a general clause that severs unlawful portions of the
11  SEIU CBA from the rest of the contract, (*id*. at 32), and Appendix A, subpart E, which provides
12  that "the Company shall pay overtime in accordance with federal and state laws," (*id.* at 40).
13   Defendant's argument is unpersuasive.  Article 17.2 does not "provide" a minimum hourly
14  wage compliant with § 514.[3]  The upward progression in California's minimum wage law did not
15  "require" Defendant to provide all of its employees with a base wage of 130 percent of minimum
16  wage or greater; instead, it merely required Defendant to pay the minimum wage.  *See* Cal Lab.
17  Code, § 1182.12.  A CBA may or may not have terms providing a minimum pay rate that is 30
18  percent greater than the California minimum wage.  If a CBA does so, the employer gains the
19  benefit of the § 514 exemption from California's overtime law.  If the CBA does not provide
20  hourly pay of at least 1.3 times the California minimum wage to all employees, the employer is
21  subject to § 510 without exemption under § 514.  Compliance with § 514 is optional.  Thus,
22  because the change in minimum wage did not "require" Defendant to comply with § 514,
23  Defendant has not met its burden to show that Article 17.2 meets the criteria established in § 514.

---

[3] Defendant contends that § 514 requires that the CBA "provide" a minimum wage at least 30 percent greater than the California minimum wage.  Plaintiff argues that § 514 requires the CBA to "expressly provide" that same wage. On this point, Defendant is correct. The word "expressly" applies to the first clause in § 514 (". . . if the agreement **expressly provides** for the wages, hours of work, and working conditions of the employees . . .") not the second clause ("and if the agreement **provides** . . . a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage"). *See* Cal. Lab. Code § 514 (emphasis added).

7

*See Ramirez v. Yosemite Water Co.*, 20 Cal.4th 785, 794-795 (1999) (finding employer bears the burden of proving exemption).

Likewise, Article 31 does not make the SEIU CBA compliant with § 514. Article 31 states in full:

> If any provision of this Agreement or the application of such provision to any person or circumstance be ruled contrary to law by any Federal or State court or duly authorized agency, the remainder of this Agreement or the application of such provision to other persons or circumstances shall not be affected thereby.

(Dkt. No. 1-1 at 32.) Defendant provides no explanation as to how this provision requires Defendant to pay 130 percent of minimum wage and its plain language does not. Thus, this "savings clause" does not bring the CBA into compliance with § 514.

Finally, Appendix A subpart E does not make the SEIU CBA compliant with § 514 either. Appendix A subpart E provides, in part, "[t]he Company shall pay the employee overtime in accordance with the federal and state laws." (*Id*. at 40.) On its face, this provision does not provide a minimum hourly wage greater than 130 percent of the state minimum wage. And, as with the other "savings clauses," Defendant provides no explanation as to how this provision requires compliance with § 514's exemption criteria.

It is Defendant's burden, not Plaintiff's, to show that the § 514 exemption applies. *Ramirez*, 20 Cal.4th at 794-795. Defendant has not met that burden. Instead, Defendant states that "[t]he use of savings clauses is also consistent with courts not requiring every provision be constantly updated – especially when the COVID 19 pandemic hit." (Dkt. No. 27 at 18.) But Defendant did not cite a single case to support that claim—let alone a case where "savings clauses" put a non-qualifying CBA into compliance with § 514. In *Huffman*, the court considered a clause similar to Article 17.2, which accompanied a non-qualifying CBA. *Huffman*, 2019 WL 2563133, at *7. There, the parties agreed that the pay rates were non-compliant under § 514. *Id.*

In sum, because the SEIU CBA does not meet the criteria set out in Labor Code § 514, Plaintiff's claim under § 510 remains.[4] Thus, Plaintiff's "right to overtime" does not exist "solely

---

[4] Defendant also mentions that Plaintiff ignores the CBA's grievance procedure. (Dkt. No. 27 at

8

as a result of the CBA" and the claim is not preempted at step one of the LMRA preemption test. *Curtis*, 913 F.3d at 1154.[5]

### 2. Does the state law right "substantially depend" on analysis of the CBA?

Under the second step of the two-part test, the Court inquires whether Plaintiff's claim can be resolved by simply looking at the CBA versus interpreting it. *See Curtis*, 913 F.3d at 1153. The Ninth Circuit has "stressed that 'interpretation' is construed narrowly in this context." *Id.* "[I]t means something more than consider, refer to, or apply." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2016) (cleaned up). "At this second step of the analysis, claims are only preempted to the extent there is an active dispute over the meaning of contract terms." *Curtis*, 913 F.3d at 1153 (cleaned up).

Defendant cites generally to the CBA without identifying precise terms that require interpretation. For example, Defendant contends that "[t]he CBA's general scope, along with the terms of its specific articles, clearly govern every statutory right alleged in the FAC." (Dkt. No. 27 at 20.) This statement is insufficient to meet Defendant's burden. *See Mkoma v. Ace Parking Management*, Inc., 2022 WL 104282, at *6 (S.D. Cal. Jan. 11, 2022) ("Mere reference to the CBA is insufficient to show a claim is substantially dependent on the CBA.") Similarly, Defendant states that Plaintiff "ignores the CBA's broad grievance procedures for resolving overtime and other disputes falling within its scope." (Dkt. No. 27 at 20.) But Defendant does not explain why "interpretation" of that provision will be necessary to resolve Plaintiff's § 510 claim.

Rather, the closest Defendant comes to identifying terms that must be interpreted is the following paragraph:

> A review of the whole CBA shows it works just fine to uphold all Plaintiff's overtime rights, non-negotiable rights, substantive rights, and all other rights in its broad scope. Plaintiff cannot establish

---

20–21.) The existence of a grievance procedure in the SEIU CBA does not lead to federal preemption unless the litigation waiver is "clear and unmistakable" and directly references the relevant statutes at issue. *Munoz v. Atl. Express of L.A., Inc.*, 2012 U.S. Dist. LEXIS 155601, at *12 (C.D. Cal. Oct. 30, 2012). Here, the SEIU CBA grievance provision does not reference the statutory rights at issue. (See Dkt. No. 1-1 at 20–21.)

[5] Because the Court finds that § 514 does not apply, the Court need not address Plaintiff's argument regarding the § 1194 overtime claim. (Dkt. No. 15 at 10.)

>otherwise by ignoring most of the CBA, especially provisions specifically touching on issues she raises in her motion, including scope (CBA Introduction and Arts. 1 and 32), grievances (Art. 28) and savings clauses (Section 17.2 and Art. 31).

(*Id*. at 21.) But a court need not interpret these sections of the SEIU CBA to determine whether § 510 applies. It is not "interpretation" to look at a CBA's wage chart and determine whether the CBA meets the hourly wage criteria under § 514. *Huffman*, 2019 WL 2563133, at *5 n.4. And a court need not "interpret" Article 17.2 to determine that § 514 does not apply here. *See id* at *7 (reviewing a clause like Article 17.2 and holding that "the word 'required' does not call for interpretation." because "[m]inimum wages statutes invariably carry an effective date after which compliance is required.")

In sum, "[i]t is not enough for Defendant[] to provide a laundry list of provisions that they allege the Court must interpret to resolve Plaintiff's claims; Defendant[] must explain *why* interpretation, as opposed to mere reference to the CBA, is necessary." *Wilson-Davis v. SSP Am., Inc.*, 434 F. Supp. 3d 806, 813 (C.D. Cal. 2020) (emphasis in original). Because Defendant has not met its burden, LMRA § 301 does not preempt Plaintiff's claim under Labor Code § 510.

### D. Rest and Meal Periods

Plaintiff alleges Defendant failed to provide rest and meal periods or compensation in lieu thereof under California Labor Code §§ 226.7 and 512. Defendant contends that the LMRA preempts these claims because the claims are inextricably intertwined with the SEIU CBA and require interpretation of the SEIU CBA.

Defendant has not established that the first step of the LMRA preemption test is met. "Plaintiff's meal and rest break claims arise under state law and not solely by virtue of the CBA—that the CBA includes provisions regarding meal and rest breaks is insufficient for preemption." *Hernandez v. Sysco Corp.*, 2017 U.S. Dist. LEXIS 65279, at *11; *see also Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 960 (C.D. Cal. 2014) ("California state law claims alleging meal period violations are not preempted even where the CBA includes language entitling employees to such breaks" and collecting cases re: the same).

With respect to the second step of the LMRA preemption test, Defendant insists that the SEIU CBA's references to meal and rest breaks mean that resolution of Plaintiff's meal and rest

break claims would require interpretation of the CBA. Defendant identifies various SEIU CBA provisions that reference meal and rest breaks, scheduling, and "equitable workload distribution requirements." (Dkt. No. 27 at 24.) In particular, Defendant argues that a Court will need to interpret the word "emergency" in a CBA provision that states "[r]est periods and meal periods may be interrupted in case of emergency." (Dkt. No. 1-1 at 18,)

Defendant's argument misinterprets the relevant inquiry at step two of the LMRA preemption test. The question is not whether a SEIU CBA term must be interpreted to determine whether Defendant complied with the SEIU CBA. Rather, a claim is preempted under step two where interpreting a CBA is necessary to determine whether Plaintiff can state a claim under state law. For example, district courts finding break claims preempted at step two have "generally reasoned that determining whether a plaintiff is entitled to meal period protections of the California Labor Code or is exempted from meal period protections under Labor Code § 512(e), requires interpreting the provisions of the particular CBA at issue." *Stone v. Sysco Corp.*, 2016 U.S. Dist. LEXIS 154424, at *17 (E.D. Cal. Nov. 4, 2016) (collecting cases). In those cases, the plaintiffs' state law right substantially depended on whether the exemption in § 512(e) applied. *Id.* To decide if the exemption applied, those courts needed to interpret ambiguous terms in the CBAs. *Id.* Here, by contrast, the state law rights are independent of the cited CBA term. In other words, Defendant does not explain why Plaintiff's state law break rights depend on the term "emergency" in the SEIU CBA. Thus, because the right at issue here is not substantially dependent on analysis of a collective bargaining agreement, Plaintiff's claims are not preempted under LMRA § 301.

**E. Minimum Wage**

Defendant's preemption arguments regarding the minimum wage claims similarly fail. First, Defendant fails to explain why the Court would need to interpret specific SEIU CBA provisions to adjudicate Plaintiff's state law right to minimum wage payments. Defendant's reference to "the existence of wages in the CBA" is insufficient to show the state law rights are "substantially dependent" on an analysis of the SEIU CBA. (Dkt. No. 27 at 23.) Moreover, as noted above, the "savings clause" in Article 17.2 does not need interpretation to resolve the state law minimum wage claim. *See Huffman*, 2019 WL 2563133, at *7. Second, Defendant argues

that "all the FAC claims are derivative of the overtime claims" and, thus, should be preempted or barred. (Dkt. No. 27 at 25.) But this argument fails because the § 510 claim is not preempted. *See* Part I.B above. Thus, Defendant has not met its burden to show that preemption applies as to the minimum wage claim.

**F.  California Labor Code § 204(c)**

Finally, Defendant argues that Labor Code § 204(c) exempts Defendant from Plaintiff's claims under California Labor Code §§ 201, 202, 203, 204, and 226. (Dkt. No. 27 at 23; Dkt. No. 18 at 19.) These provisions govern the timing of wage payments and the content of wage statements. Section 201 sets baseline rules for payment of wages upon discharge or layoff. Section 202 sets rules for payment of wages upon resignation. Section 203 sets penalties for willful violations of those and other provisions. Section 226 requires employers to provide itemized wage statements. And § 204 provides baseline rules for the timing of semimonthly payments under the Labor Code. Section 204(a) states:

> All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.

Cal. Lab. Code. § 204(a). However, § 204(c) states that "when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees."

The SEIU CBA does establish a slightly different pay arrangement from the terms in Section 204(a). The SEIU CBA provides that paydays shall be on the 10th and 25th day of every month. (Dkt. No. 1-1 at 23.) It further provides that if a payday falls on a Sunday, the paychecks will be handed out the following Monday. (*Id.*) In such a scenario, the pay for work completed in a previous month could fall on the 11th day of the following month—e.g. the Monday following a Sunday that is the 10th day of a month. That scenario, contemplated in the CBA, is a different pay

12

1   arrangement than the requirements contemplated in § 204(a). Thus, § 204(c) applies.

2   Where a statutory exemption to the Labor Code applies, the right exists as a result of the CBA, not the Labor Code. *See Curtis*, 913 F.3d at 1155. Defendant argues that because Section 204(c) applies, Plaintiff's claims under §§ 201, 202, 203, and 226 are preempted under step one of the LMRA preemption test. Defendant also argues that Plaintiff's claim under § 204 is preempted. The Court disagrees as to §§ 201, 202, 203, and 226 but agrees as to § 204.

### 1. Plaintiff's claims under §§ 201, 202, 203, and 226 are not preempted

Section 204(c) states: "However, when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees." Defendant urges the Court to adopt an interpretation of the words "different pay arrangements" as referring to pay arrangements different from *any* provision of the Labor Code, not just § 204. (Dkt. No. 27 at 23 n.37.) In other words, Defendant's position would mean that Section 204(c) is a blanket exemption from any pay arrangement law where the CBA's terms differ from those of the Labor Code. Defendant provides no statutory analysis to support that interpretation. Nor would any reasonable interpretation of § 204 support such a broad interpretation.

Rather, § 204(c) provides that a CBA's terms apply rather than the content of § 204, when an employee is covered by a CBA with different pay arrangements from those stated in § 204. Section 204(c) does not mention any other statutory provisions and its text gives no indication that the provision should apply to any other section of the Labor Code. To read a broad exemption from all "pay arrangement" laws into § 204(c)'s silence would be an error. In the Labor Code, cross-provision exemptions are explicit. *See* Cal. Labor Code § 514 (providing exemption from the requirements in § 510). And statues such as §§ 201 and 226 have specific exemption provisions that cover other contexts. *See id.* § 201.9 (exempting employees at venues that host live theatrical events who are covered under a collective bargaining agreement from § 201); *id.* § 226(j) (exempting employers from certain itemized wage statement requirements under specific, limited circumstances). By contrast, § 204(c) provides no indications that it applies beyond the context of § 204. Contrary to Defendant's broad interpretation, § 204(c) only provides that a CBA

United States District Court
Northern District of California

applies instead of § 204 where an employee is subject to such a contract.

The limited authority that Defendant cites is unconvincing.  First, Defendant cites *Gillette v. Stater Brothers Markets*, 2019 WL 8017735 (C.D. Cal. Sept. 23, 2019).  There, the court wrote that "California Labor Code Sections 201–204 do not apply if a collective bargaining agreement provides for different pay arrangements. Cal. Lab. Code § 204(c)." *Id.* at *6; *see also Rodriguez v. Gonsalves & Santucci, Inc.*, 2022 WL 161892, at *5 (N.D. Cal. Jan. 18, 2022) (quoting *Gillette*).  But *Gillette* provides no statutory analysis to support that claim; nor does it cite any California authority to support its statement.  As described above, the Court disagrees.  Likewise, Defendant's citation to *Hall v. Live Nation Worldwide, Inc.*, 146 F.Supp.3d 1187 (C.D. Cal. 2015) is unpersuasive.  In *Hall*, the plaintiffs' employment fell under two statutory exemptions to § 201, §§ 201.5(e) (exempting motion picture broadcasting and production employees) and § 201.9 (exempting employees at concert or theatrical venues).  *Id.* at 1201–2. Those exemptions, not § 204(c), led to LMRA preemption of the *Hall* plaintiffs' § 201 claim.  *Id.*  Section 204(c) did apply in that case, but only to the extent that it preempted a Section 204 claim.  *Id.* at 1203. Moreover, the CBA in that case explicitly waived the protections of §§ 201 and 204 under §§ 201.9 and 204(c) respectively.  Here, there is no such explicit waiver and only 204(c) applies, not § 201.9 or § 201.5(e).  As a result, *Hall* does not support the proposition that when § 204(c) applies, §§ 201, 202, 203 and 226 do not.

In sum, Plaintiff's claims under §§ 201, 202, 203 and 226 are not preempted under step one of the LMRA preemption test because 204(c) does not provide an exemption to those statutes.  Moreover, Defendant has not met its burden to show that interpreting the SEIU CBA is necessary to resolve Plaintiff's claims under prong two.  Thus, LMRA § 301 does not preempt Plaintiff's claims under §§ 201, 202, 203 and 226.

### 2. Plaintiff's claim under § 204 is preempted

As discussed above, the statutory exemption in § 204(c) applies.  Because the exemption applies, Plaintiff's rights under § 204(a) stem not from that statute, but from the arrangements agreed upon in the SEIU CBA.  Thus, under *Curtis*, LMRA § 301 preempts Plaintiff's § 204(a) claim.  *See Curtis*, 913 F.3d at 1155.

Plaintiff argues that because § 204(d) applies, § 204(c) does not apply. (Dkt. No. 36 at 18–19). *See also Mkoma*, 2022 WL 104282, at *9 ("While section 204(c) allows for a CBA to supersede section 204, the present CBA directly aligns with section 204(d)—thus, the right to timely payment cannot exist solely as a result of the CBA.")  The Court disagrees with that interpretation.  Section 204(d) provides that the "requirements of this section shall be deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven calendar days following the close of the payroll period."  Section 204(c)'s exemption for CBA pay arrangements that differ from the requirements in § 204 operates independently of the § 204(d) satisfaction provision.  In other words, § 204(d) states how employers may comply with § 204(a), but it does not affect the exemption for employees covered by a CBA as described in 204(c).  Thus, because LMRA § 301 preempts the Labor Code § 204(a) claim, there is federal jurisdiction over that claim.

## II. Defendant's Motion to Dismiss

A claim preempted by § 301 of the LMRA should be dismissed if brought by an employee who failed to exhaust the applicable CBA's grievance and arbitration process. *See Kobold*, 832 F.3d at 1036-37, 1041-42 (failure to exhaust, or allege valid excuse for failure to exhaust, a claim preempted by section 301 precludes pursuing that claim in court).  Because Plaintiff has not alleged exhaustion under the SEIU CBA for the § 204 claim, that claim is dismissed.  To the extent Plaintiff's claim under California's Business & Professional Code § 17200 is based on the § 204 claim, that claim is also dismissed.  *See Estrada v. Kaiser Foundation Hospitals*, 678 Fed. Appx. 494, 497 (9th Cir. 2017) (finding that where a cause of action derives from a preempted claim, the derivative cause of action also fails).

## III. Supplemental Jurisdiction

As discussed above, Plaintiff's remaining causes of action are state law claims.  Because the Court has not considered the merits of Plaintiff's allegations, judicial economy favors declining to exercise supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir.), supplemented, 121 F.3d 714 (9th Cir. 1997), as amended (Oct. 1, 1997) ("The Supreme Court has stated, and we have often repeated, that in the

15

usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." (cleaned up)); *Schwanke v. Minim Productions, Inc.*, 2021 WL 4924772, at *8 (C.D. Cal. May 24, 2021) (declining supplemental jurisdiction after dismissing preempted claims).

## CONCLUSION

For the reasons stated above, Plaintiff's motion for remand is DENIED. Defendant's motion to dismiss is GRANTED in part and DENIED in part: Plaintiff's Labor Code §204 is dismissed as preempted by the LMRA and in all other respects the motion to dismiss is denied. Because the Court declines supplemental jurisdiction over the remaining claims, the case is remanded to the San Francisco Superior Court.

This Order disposes of Docket Nos. 15, 18.

**IT IS SO ORDERED.**

Dated: July 15, 2022

JACQUELINE SCOTT CORLEY
United States District Judge